**Hannah REBAK, party in interest in the case of Julius Rebak, Claimant, Plaintiff,**

v.

**David MATTHEWS, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

No. 75 Civ. 3695.

United States District Court, S. D. New York.

July 21, 1977.

Goldberg & Weprin, New York City, for plaintiff; Robert N. Hochberg, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York, New York City, for defendant; Victor J. Zupa, Asst. U. S. Atty., New York City, Borge K. Varmer, Regional Atty., Alice L. Litter, Asst. Regional Atty., New York City, Dept. of Health, Ed. and Welfare, of counsel.

## OPINION

GAGLIARDI, District Judge.

This action is brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) (1970), to review the final determination of the Secretary of Health, Education and Welfare ("the Secretary") denying plaintiff's application for certain retirement insurance benefits for the years 1970 through 1973. All administrative remedies have been exhausted [1] and the plaintiff, who is suing as party in interest in the case of her deceased husband, Julius Rebak, has properly brought this action in this court.[2] 42 U.S.C. § 405(g). Plaintiff has moved for summary

judgment pursuant to Rule 56, Fed.R. Civ.P., and the defendant Secretary has cross-moved for judgment on the pleadings pursuant to Rule 12(c). Upon a review of the pleadings and the transcript of the administrative record of the claimant's proceedings before the Social Security Administration, including the decision of the Appeals Council which was adopted by the Secretary, plaintiff's motion is denied and defendant's motion is granted.

On March 27, 1970 Julius Rebak ("the claimant") filed an application for retirement benefits, as provided by 42 U.S.C. § 402(a).[3] Although the application was initially granted, four years later it was finally determined that the claimant had never in fact retired as he had alleged. The Appeals Council concluded that the claimant had rendered services for wages in excess of the amount allowed by the Act, that benefit overpayments totalling $4,661.60 had been made to him, and that deductions were imposable to recover the amount overpaid. The Appeals Council based its deci-

---

1. The Social Security Administration of the Department of Health, Education and Welfare rendered its initial adverse decision on August 17, 1972 by notification given by the Claims Authorization Branch of the Bureau of Retirement and Survivor's Insurance. Julius Rebak requested reconsideration and on May 4, 1973 the Bureau's Reconsideration Branch affirmed. Julius Rebak then requested a hearing before an Administrative Law Judge of the Bureau of Hearings and Appeals. Following a hearing and de novo consideration of the case, the Administrative Law Judge on February 4, 1974 ruled that the denial of retirement benefits was improper. The Appeals Council of the Bureau of Hearings and Appeals then reviewed and reversed the determination of the Administrative Law Judge. After reviewing the existing record and considering additional new evidence, the Appeals Council on December 31, 1974 entered its decision denying benefits and imposing deductions, as explained *infra*. The Secretary adopted this decision as his final determination.

2. Julius Rebak, the claimant in the administrative proceedings, died at about the time of the Secretary's adverse determination. Representatives of his estate requested and the Secretary granted two extensions of time to commence this civil action, in which the claimant's widow is named plaintiff, and accordingly the suit is timely filed under 42 U.S.C. § 405(g).

42 U.S.C. § 405(g), "Judicial review," provides in pertinent part:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.

3. 42 U.S.C. § 402, "Old-age and survivors insurance benefit payments—Old-age insurance benefits," provides in pertinent part:

(a) Every individual who—
(1) is a fully insured individual (as defined in section 414(a) of this title),
(2) has attained age 62, and
(3) has filed application for old-age insurance benefits . . .
shall be entitled to an old-age insurance benefit . . . .

sion on 42 U.S.C. § 403, which at all relevant times provided that a qualified individual over 62 could earn $1680 in a taxable year without having deductions imposed against the retirement benefits to which he was entitled.[4] However, if his total "earnings," defined by 42 U.S.C. § 403(f)(5)(A) as the sum of his wages [5] plus net earnings from self-employment,[6] exceeded $1680, his benefits would be offset in certain increments by such excess earnings.[7] No benefits were to be withheld for a month in which a beneficiary neither engaged in self-employment nor rendered services for wages in excess of $140.

Following this statutory scheme and concluding that the claimant had not in fact retired, the Appeals Council determined that he had been paid excess wages in all months of 1970, 1971 and 1972 and that deductions in the amount of $4,661.60 were properly imposed under 42 U.S.C. § 404(a) to recover the overpayment of benefits to which the claimant was not entitled. The Appeals Council further held that recovery

4. 42 U.S.C. § 403, "Reduction of insurance benefits—Maximum Benefits," as applicable after 1967 and prior to 1973, provided in pertinent part:

(b) Deductions, in such amounts and at such time or times as the Secretary shall determine, shall be made from any payment or payments under this subchapter to which an individual is entitled . . . until the total of such deductions equals—

(1) such individual's benefit or benefits under section 402 of this title for any month . . . if for such month he is charged with excess earnings, under the provisions of subsection (f) of this section, equal to the total of benefits referred to in clauses (1) and (2). If the excess earnings so charged are less than such total of benefits, such deductions with respect to such month shall be equal only to the amount of such excess earnings.

&ast; &ast; &ast; &ast; &ast; &ast;

(f) For purposes of subsection (b) of this section—

(1) . . . no part of the excess earnings of an individual shall be charged to any month . . . (E) in which such individual did not engage in self-employment and did not render services for wages (determined as provided in paragraph (5) of this subsection) of more than $140.

&ast; &ast; &ast; &ast; &ast; &ast;

(3) For purposes of paragraph (1) and subsection (h), an individual's excess earnings for a taxable year shall be his earnings for such year in excess of the product of $140 multiplied by the number of months in such year, except that of the first $1,200 of such excess (or all of such excess if it is less than $1,200) an amount equal to one-half thereof shall not be included. . . .

(4) For purposes of clause (E) of paragraph (1)—

&ast; &ast; &ast; &ast; &ast; &ast;

(B) An individual will be presumed, with respect to any month, to have rendered services for wages (determined as provided in paragraph (5) of this subsection) of more than $140 until it is shown to the satisfaction of the Secretary that such individual did not render such services in such month for more than such amount.

(5)(A) An individual's earnings for a taxable year shall be (i) the sum of his wages for services rendered in such year and his net earnings from self-employment for such year, minus (ii) any net loss from self-employment for such year.

The only material changes in the above sections as currently in effect relate to an increase in the amount of exempt earnings which may be received by an individual without being charged to excess earnings.

5. 42 U.S.C. § 409, "Definition of wages," provides in pertinent part:

For the purposes of this subchapter, the term "wages" means . . . remuneration paid after 1950 for employment, including the cash value of all remuneration paid in any medium other than cash.

42 U.S.C. § 410(j), "Definitions relating to employment," provides in pertinent part:

(j) The term "employee" means—

(1) any officer of a corporation.

6. 42 U.S.C. § 411, "Definitions relating to self-employment," provides in pertinent part:

For the purposes of this subchapter—

(a) The term "net earnings from self-employment" means the gross income, as computed under [Subtitle A of the Internal Revenue Code of 1954,] derived by an individual from any trade or business carried on by such individual, less the deductions allowed under such subtitle which are attributable to such trade or business . . . except that in computing such gross income and deductions . . .—

(1) There shall be excluded rentals from real estate . . . together with the deductions attributable thereto, unless such rentals are received in the course of trade or business as a real estate dealer . . .

7. Benefits were offset at a rate of $1.00 for each $2.00 of earnings between $1,680 and $2,880, and $1.00 for each $1.00 of earnings in excess of $2,880.

of the overpayments could not be waived under 42 U.S.C. § 404(b) because the claimant was not "without fault."[8] This decision was adopted by the Secretary as his final determination.

In seeking review of the Secretary's final determination, the plaintiff raises two separate claims of error. First, the plaintiff argues as a matter of fact that the claimant did retire from his paid position in 1970 and that consequently no excess wages were paid him such as would justify termination of benefits and imposition of deductions. In addition, plaintiff contends that even if the claimant did receive certain earnings subsequent to his claimed retirement, those earnings were self-employment earnings derived from rentals from real estate, and, pursuant to 42 U.S.C. § 411(a), footnote 5, *supra*, were specifically excluded from computation of earnings.

■ In considering plaintiff's contention that the Secretary erred in determining that the claimant had not retired and had received excess wages, this Court is guided by the undisputed rule that the findings of the Secretary must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Herbst v. Finch*, 473 F.2d 771 (2d Cir. 1972); *Levine v. Gardner*, 360 F.2d 727 (2d Cir. 1966); *Stevenson v. Flemming*, 200 F.Supp. 705 (S.D.N.Y.1960) (Kaufman, D. J.), *aff'd on opinion below*, 297 F.2d 811 (2d Cir. 1961). Inferences and conclusions drawn by the Secretary from the basic evidentiary facts are equally conclusive if reasonably reached upon due consideration of all relevant issues after all parties have been given a fair hearing. *Walker v. Alt-*

*meyer*, 137 F.2d 531, 533–34 (2d Cir. 1943); *Beane v. Richardson*, 457 F.2d 758 (9th Cir.), *cert. denied*, 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105 (1972); *Julian v. Folsom*, 160 F.Supp. 747 (S.D.N.Y.1958). Reviewed under these standards, the administrative record establishes the following facts.

When the claimant filed his application for retirement insurance benefits in 1970 he was the president and sole stockholder of the Rebak Realty Corporation ("Rebak Realty"), a family corporation incorporated in 1956 of which his wife and two sons were also officers.[9] Rebak Realty owned a commercial building at 2550 Broadway, New York, New York in which office and garage space were leased to numerous tenants. Its corporate office was located in the claimant's home. For many years the claimant had controlled the operation of the corporation and had made all managerial decisions concerning rent collection, lease terms, tenant selection, insurance, and corporate and real estate tax matters. In 1966 and 1967 the claimant received an annual salary of $6600 from Rebak Realty, in 1968 he was paid $7800 and in 1969 his compensation was $10,000.

In his 1970 application for retirement insurance, the claimant initially estimated that his 1970 earnings would approximate $7800, but later he revised his estimate and calculated he would earn only $3000 that year. He asserted that the lower earnings figure reflected the reduction in his work activity due to poor health and his wife's assumption of the managerial duties he had previously performed. On the basis of this representation the application was approved and the claimant was granted

---

8. 42 U.S.C. § 404, "Overpayments and underpayments," provides in pertinent part:
    (a) . . . .
    (1) With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount . . . . .
    (b) In any case in which more than the correct amount of payment has been made,

there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

9. The claimant was also the president and sole stockholder of One Bennett Corporation, another family corporation of which his wife and sons were officers. The claimant was never paid a salary by One Bennett Corporation, and his relationship with it is not presently in issue.

retirement benefits effective January, 1970. Thereafter the claimant informed the Bureau of Retirement and Survivor's Insurance ("the Bureau") that his yearly earnings from Rebak Realty constituted his sole compensation, and he reported that these earnings amounted to $3,000 in each of 1970 and 1971, and $1,600 in 1972. These figures were similarly reported in Rebak Realty's corporate tax returns, which also reported that the claimant's wife was paid wages of $5,000 in each of 1970 and 1971, and $8,000 in 1972.

Subsequent investigation into the claimant's business-related activities and income, however, led the Bureau, and ultimately the Secretary, to conclude that after 1970 the claimant's wife did not take over the management of the corporation, that the claimant did not cease exercising the same control or performing the same managerial tasks that he had before his alleged retirement, and that he received indirect compensation from Rebak Realty through sham wage payments to his wife. There is substantial evidence in the record to support these conclusions. It was admitted that the responsibilities of the wife after 1970 consisted almost entirely of collecting the rent, which was mailed by the tenants on a routine monthly basis to the claimant's home, and paying the bills, with which she was assisted by the claimant. All bookkeeping for Rebak Realty was done by an accountant. Although the claimant asserted that his wife had taken over all checkwriting and "paperwork", cancelled checks introduced into the record show that the claimant continued to sign checks on the corporate account after 1970, and he conceded that his ongoing practice was to advise his wife and review her record-keeping. The claimant further admitted that he continued making all major decisions affecting the corporation. Equally indicative of the lack of any bona fide change in the claimant wife's responsibilities is the fact that although she had been doing clerical work and had been authorized to write checks on the Rebak Realty account since 1956, she was never paid any reported wages for this work until 1970, in which year the claimant

allegedly retired and she began receiving at least $5,000 in annual compensation. Plaintiff does not dispute that after 1970 the claimant continued as president and sole owner of Rebak Realty, and the evidence outlined above supports the Secretary's conclusion that he continued in fact to bear the burden of managing the corporation in the same executive capacity that he had before 1970.

It is thus clear that the reduction in the claimant's reported compensation from Rebak Realty as of 1970 did not correspond to an actual reduction in the managerial services which he rendered to the corporation. It is similarly evident that the compensation paid to the claimant's wife in 1970, 1971 and 1972 did not reflect an actual increase in her authority or the extent of her services to the corporation. Therefore, the Secretary was justified in concluding that this "payment [to her] may be regarded under the circumstances as a sham and self-serving device." Here the Secretary has determined that the claimant created a fictitious salary arrangement by remaining the controlling force in his corporation's business affairs while reducing his own reported compensation and putting his wife on the payroll without materially increasing her duties. The Secretary had the authority and the obligation to pierce this arrangement and to determine the bona fides of the corporate payments, and accordingly he could properly conclude as a matter of fact that this arrangement was merely a "scheme of shifting wages" by which the claimant continued to receive indirect compensation from the corporation through sham payments to his wife. Dondero v. Celebrezze, 312 F.2d 677, 678 (2d Cir. 1963); Newman v. Celebrezze, 310 F.2d 780 (2d Cir. 1962); Poss v. Ribicoff, 289 F.2d 10 (2d Cir. 1961), cert. denied, 368 U.S. 902, 82 S.Ct. 178, 7 L.Ed.2d 96 (1962); see Carlson v. Richardson, 331 F.Supp. 1000 (D.Conn. 1971); see also Skalet v. Finch, 431 F.2d 452 (6th Cir. 1970); cf. Gardner v. Hall, 366 F.2d 132 (10th Cir. 1966). Upon the foregoing review of the facts established by the record, this Court finds that there is sub-

stantial evidence to support the Secretary's determination that the claimant did not retire in 1970 as alleged and that the value of his services to the corporation thereafter was equal to the combined salaries paid to him and to his wife.

There remains plaintiff's contention that even if the claimant did receive earnings from Rebak Realty, those earnings must be considered as excludible under 42 U.S.C. § 411(a). In support of her argument that the claimant's compensation from Rebak Realty should be treated as self-employment income rather than as wages, plaintiff argues that the claimant owned Rebak Realty, that there was virtually no activity carried on by Rebak Realty as a corporate entity, and that consequently the corporate entity should be disregarded and its income be deemed the self-employment income of the claimant. Plaintiff next contends that this income was derived from rentals from real estate (the commercial building at 2550 Broadway) and therefore, under 42 U.S.C. § 411(a), must be excluded from a calculation of the claimant's self-employment earnings.

It is undisputed that under the Social Security Act "rentals from real estate" are excludible only from an applicant's net earnings from self-employment. 42 U.S.C. § 411(a); *see Delno v. Celebrezze*, 347 F.2d 159, 162–163 (9th Cir. 1965). There is no provision made by the statute for excluding *bona fide* corporate compensation or wages from the computation of earnings as defined by 42 U.S.C. § 403(f)(5)(A), even if the wages are paid out of corporate income which was itself generated by real estate rentals. *See* 42 U.S.C. §§ 409, 410. Accordingly, the excess earnings which the Secretary properly found to have been received by the claimant could be excluded only if the plaintiff were correct in her characterization of those earnings as self-employment income. As appears more fully below, however, under the factual circumstances found by the Secretary and established by the record, this court can neither ignore the existence of Rebak Realty nor treat the wages received by the claimant from that corporation as self-employment income excludible as rentals from real estate.

The record establishes that Rebak Realty was incorporated under the laws of New York State in 1956 and that since that time its corporate structure has been maintained in form and in substance. Officers were elected, regular accounting records have been consistently maintained, and corporate tax returns have been filed annually. On its tax returns for 1971 and 1972 Rebak Realty recorded $1300 in business deductions for automobile expenses and over $100 in telephone expenses in each year. The corporate returns also disclose that the corporation's retained annual earnings have increased from $33,433 in 1969 to $72,560 as of 1973. On these tax returns the annual payments made to the claimant were reported as "compensation to officers," and on his individual tax returns, filed jointly with his wife, the claimant invariably reported these payments as "wages, salaries."

The foregoing facts amply support the Secretary's determination that Rebak Realty Corporation was not treated as a non-existent corporate entity but was in fact a substantial business which was managed as a corporation in proper accordance with, and in reliance on, pertinent corporate and tax law. There is no evidence that the corporation Rebak Realty was used as a mere shell or a sham entity without legal validity. The claimant conceded that the corporate form was adopted because of the advantages it offered with respect to income taxes and limited personal liability. In addition, when the claimant filed his application for retirement benefits in 1970, in order to establish the necessary minimum quarters of coverage to qualify for benefits under 42 U.S.C. §§ 413 and 414, he relied on the legitimacy of Rebak Realty's corporate status to prove that he had received *bona fide* annual salary payments from it.

For the purposes of the Social Security Act "wages" means remuneration for employment, and "employee" includes any officer of a corporation. 42 U.S.C. §§ 409 and 410(j). *See, e. g., Weisenfeld v. Richardson,*

463 F.2d 670, 672 (3rd Cir. 1972). The courts have routinely held that when an individual wishes to qualify for retirement benefits by receiving wage payments, he may legitimately draw a salary from his family-owned corporation which controls real estate assets, as long as his salary is commensurate with the value of his services to the corporation and there is "proper adherence to the normal corporate routines." *Stark v. Flemming*, 283 F.2d 410 (9th Cir. 1960); *Flemming v. Lindgren*, 275 F.2d 596 (9th Cir. 1960); *Brannon v. Ribicoff*, 200 F.Supp. 697 (D.Mont.1961). In such circumstances the corporate compensation must be treated as *bona fide* wages, and the individual's earnings cannot be excluded as self-employment income even though the corporation may be a family-owned close corporation whose income consists entirely of rentals from real estate. *Stark v. Flemming, supra; Brannon v. Ribicoff, supra; cf. Carlson v. Richardson, supra*, 331 F.Supp. at 1002–1003.

Under the foregoing analysis, the claimant's income from Rebak Realty must be considered *bona fide* wages. It is clear from the record that since the date of its incorporation the business of Rebak Realty has been conducted with "proper adherence to the normal corporate routines." *Stark v. Flemming, supra*, 283 F.2d at 410. Furthermore, the Secretary determined that the claimant did not relinquish his active managerial control of the corporation or assume a role limited solely to passive receipt of income. The Secretary found as a matter of fact that the claimant continued to provide valuable services to the corporation and received a proper salary commensurate with the value of his services. As outlined at length, *supra*, there is substantial evidence in the record to support the Secretary's factual determinations.

Consequently, the existence of Rebak Realty Corporation cannot be ignored and the compensation received by the claimant must be considered wages, not self-employment income, and is properly chargeable to excess earnings. 42 U.S.C. § 403(f).

The final question to be reviewed is whether the Secretary was justified in finding that the claimant's obligation to refund the benefit overpayments could not be waived because the claimant was not "without fault." 42 U.S.C. § 404(b). *See* footnote 7, *supra*. The applicable Social Security Administration Regulation, 20 C.F.R. § 404.511(a),[10] provides in pertinent part:

An individual will not be "without fault" if the Administration has evidence in its possession which shows either a lack of good faith or failure to exercise a high degree of care in determining whether circumstances which may cause deductions from his benefits should be brought to the attention of the Administration by an immediate report or by return of a benefit check. The high degree of care expected of an individual may vary with the complexity of the circumstances giving rise to the overpayment and the capacity of the particular payee to realize that he is being overpaid.

Plainly, there is substantial evidence to support the finding that the fictitious wage reallocation scheme devised by the claimant, discussed *supra*, demonstrates that he was at fault within the meaning of the controlling regulations.

For the foregoing reasons, the Secretary's decision that overpayments were made to the claimant and that he was not without fault in the creation of the overpayment is affirmed. Plaintiff's motion is denied, and the Government's motion for judgment on the pleadings is granted.

10. The Appeals Council cited 20 C.F.R. § 404.-507, which provides that "fault" may result from "(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material." However, that regulation on its face does not apply to "deduction overpayments," and is not governing in this context. *Miller v. Richardson*, 333 F.Supp. 218, 221 n. 3 (S.D.N.Y.1971); *Gruver v. Secretary of H.E.W.*, 138 U.S.App.D.C. 201, 204, 426 F.2d 1195, 1198 (D.C.Cir.1969), *cert. den.*, 397 U.S. 977, 90 S.Ct. 1092, 23 L.Ed.2d 272 (1970).

The complaint is dismissed with prejudice. The clerk of the court is directed to enter judgment without costs.

So Ordered.