Florence **BERGER**, Plaintiff-Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**, Defendant-Appellee.

No. 86–4164.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 20, 1987.

Decided Dec. 16, 1987.

Gregory L. Kordic (argued), Shapiro, Kendis & Assoc., Co., LPA, Cleveland, Ohio, for plaintiff-appellant.

Kathleen A. Sutula (argued), Asst. U.S. Atty., Cleveland, Ohio, for defendant-appellee.

Before JONES, GUY and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Florence Berger appeals the order of a magistrate affirming the Secretary's final decision that she owes the Social Security Administration (SSA) $29,458.90 for retirement benefits that were improperly paid to her because she understated her earnings income. Upon consideration of the parties' briefs and the record of the administrative proceedings, we find that the amount of overpayment is supported by substantial evidence and accordingly affirm the magistrate's order.

**I**

Mrs. Berger was awarded retirement benefits in August 1978, after working full time for her husband in their family-owned jewelry store for over twenty-five years. At the time she applied for benefits, she claimed she had worked only on weekends during the prior six months and would continue to do so in the future.

In August 1984, Mrs. Berger went with her husband to the local social security office seeking an increase in her benefits. She completed and signed a standard information form on which she stated:

I work for Al Berger Jewelers, Inc. My husband is the president. I am an officer, but I do not know what office I hold. I work six days a week, 10 a.m. to 6 p.m. Mon—Sat (except Tues which is 10 a.m. to 9 p.m.) . . . I am a buyer—the only one for the business. About 25% of my workweek is taken up by the buying work—contracting manufacturers. I also sell to customers—about 50%. The other 25% is administrative—directing employees, sales meeting, etc. These duties have not changed at all from before 1978.

On the basis of this form, SSA investigated Mrs. Berger's retirement status and concluded that she continued to devote all of her working time to the family business. SSA also determined that although the jewelry store records showed she had been paid a nominal salary of $50 a week since her alleged retirement, the actual value of the services she performed at the store was substantially more.

On December 6, 1984, the regional office of SSA notified Mrs. Berger that the true value of her work at the jewelry store from 1978 through 1983 ranged from $20,000 in 1978 to $27,300 in 1983. SSA based its valuation of her work on the fact that she had earned approximately $21,000 in the years immediately preceeding her supposed retirement and then adjusted that figure for specific yearly factors such as inflation, salary increases and varying profits at the store. SSA deducted the amount of exempt earnings for each year from its valuation of Mrs. Berger's services for that year and then calculated the amount of benefits that should have been withheld for each dollar Mrs. Berger earned over the exempt amount.[1] The calculations revealed that Mrs. Berger was ineligible for all the retirement benefits she had received since 1978 and, consequently, that Mrs. Berger owed SSA $29,458.90 for overpaid benefits.[2]

---

1. Retired individuals may engage in some employment activity without losing their retirement benefits. *See* 42 U.S.C. § 403(b) & (f). However, once they earn wages above the exempt amount, half of their excess earnings is deducted from their benefits and, if they earn enough money, the deductions can eliminate their eligibility for benefits entirely. *Ibid.* The yearly exempt earnings amounts applicable to Mrs. Berger are: for 1978, $3240; for 1979, $3480; for 1980, $3720; for 1981, $5500; for 1982, $6000; and for 1983, $6600.

2. The Social Security Act requires the Secretary to recover erroneous overpayments of benefits. 42 U.S.C. § 404(a)(1)(A). However, the Secretary may, in his discretion, waive the overpayment if the individual was without fault in creating the overpayment and if recovery would defeat the purpose of the Social Security Act or be "against equity and good conscience." 42 U.S.C. § 404(b); *See also* 20 C.F.R. §§ 404.511(a), 404.508, 404.509 (defining the statutory terms).

## II

Mrs. Berger requested a hearing before an administrative law judge to determine whether the amount of overpayment was correct. She did not contest the fact that she had been overpaid benefits or that she was not entitled to a waiver of the overpayment. However, she did challenge the amount of overpayment, claiming that she owes only $5854.02 because the true value of her work was far lower than calculated by SSA. This figure is based on her contention that she worked only twenty hours a week at the store at a salesworker's value of approximately $5.25 an hour.

The ALJ rejected Mrs. Berger's measure of the overpayment amount largely on the basis of the information form she signed in 1984 admitting that she performed a variety of services at the store other than sales and that she devoted far more than twenty hours a week to the store. The ALJ also relied on testimony from the store bookkeeper corroborating Mrs. Berger's statements on the form, as well as the store sales records which indicated that Mrs. Berger had significant sales activities during the time she supposedly was working only part time.[3]

Finding that Mrs. Berger "clearly continued working on a substantial basis" after her retirement, the ALJ attempted to determine the value of her services during that time. He noted that the relation of Mr. and Mrs. Berger's salaries had changed radically in the years since Mrs. Berger's retirement. In the few years prior to her retirement, both Bergers had been paid approximately $20,800 a year. After the alleged retirement, Mr. Berger's salary immediately increased to $80,000 or more while Mrs. Berger's decreased to $2600, despite the fact that they both continued to perform the same type and amount of ser-

vices that they had before Mrs. Berger retired. The ALJ decided that the salary discrepancy, as well as the fact that Mrs. Berger, as an officer and half owner, had a significant interest in the store, supported a finding that Mrs. Berger earned half of the combined wages paid to her and her husband from 1978 through 1983. The ALJ then divided their combined yearly salaries in half, and found that the value of Mrs. Berger's services was $51,600 in 1978, $41,600 in 1979, $41,600 in 1980, $50,000 in 1981, $52,900 in 1982 and $55,400 in 1983. Finding that these figures eliminated Mrs. Berger's eligibility for retirement benefits during those years, the ALJ determined that Mrs. Berger had been overpaid $29,-458.90 in benefits and, because she was not without fault in creating the overpayment,[4] that she could not have the overpayment waived.

## III

Mrs. Berger renews her contention that the amount of overpayment she owes is only $5854.02. She also claims the administrative proceedings were unfair because the 1984 information form the ALJ relied on was obtained surreptitiously since she was not told at the time she completed the form that the information could be used to deny her benefits, and because she was deprived of the opportunity to examine the agency employee who initially determined that she had been overpaid benefits.

■ "Our role as a reviewing court is not to retry the case *de novo." Holden v. Califano*, 641 F.2d 405, 409 (6th Cir.1981). We must uphold the Secretary's determination that Mrs. Berger owes the administration $29,458.90 if that figure is supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is

---

3. In 1983, Mrs. Berger made sales of $119,-723.83, which was about 11% of the total sales made that year by the store's five employees; in 1982, her sales were $127,255.45, about 13% of the total sales that year; in 1981, they were $186,685.30, almost 18% of the total sales that year, and in 1980, they were $175,212.25, about 17% of the total sales that year.

4. The ALJ found that at the time Mrs. Berger applied for retirement benefits, she "made incorrect statements with respect to her participation in the business and actual value to the corporation which she obviously knew or should have known to be incorrect." In addition, she "failed to report that she was actually working on a ... substantial basis ... [and] she accepted [benefit] payment[s] which she knew or could be expected to know were incorrect."

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971). "Even if the court might arrive at a different conclusion, the decision must be affirmed if supported by substantial evidence." *Siterlet v. Secretary of Health and Human Services,* 823 F.2d 918, 920 (6th Cir.1987) (citation omitted).

■ The Secretary is authorized to examine the substance of business transactions and relationships in order to determine if a retired individual actually rendered substantial services while supposedly retired. 42 U.S.C. § 403(f)(4)(A) & (B); *accord Heer v. Secretary of Health and Human Services,* 670 F.2d 653, 655 (6th Cir. 1982) (citing *Holden,* 641 F.2d at 409; and *Skalet v. Finch,* 431 F.2d 452, 454 (6th Cir.1970)). By regulation, the Secretary has stated that:

> In determining whether an individual has or has not performed substantial services in any month, the following factors are considered:
>
> (1) The amount of time the individual devoted to all trades and businesses;
>
> (2) The nature of the services rendered by the individual;
>
> (3) The extent and nature of the activity performed by the individual before he allegedly retired as compared with that performed thereafter;
>
> (4) The presence or absence of an adequately qualified paid manager, partner, or family member who manages the business;
>
> (5) The type of business establishment involved;
>
> (6) The amount of capital invested in the trade or business; and
>
> (7) The seasonal nature of the trade or business.

20 C.F.R. § 404.446(a); *see also* 20 C.F.R. § 404.447 (elaborating on the factors considered).

■ We agree with the Secretary's determination that Mrs. Berger provided substantial services to the family business dur-ing the years she supposedly was retired. Testimony from Mr. and Mrs. Berger and the store bookkeeper, as well as the store sales records and the personal and corporate tax returns of the Bergers, supports the ALJ's finding that Mrs. Berger worked full time at the jewelry store from 1978 through 1983 and that she performed a variety of services during that time, including sales work, buying, and personnel.

■ However, there is not substantial evidence in the record to support the ALJ's finding that the value of Mrs. Berger's services was half of the combined wages she and her husband earned during each year in issue. While we agree with the ALJ's conclusions that Mrs. Berger, as an active part owner and officer of the business, significantly contributed to the store's profits, and that those profits were reflected in the salaries paid to her and her husband, we cannot conclude, on the basis of those facts alone, that the yearly value of Mrs. Berger's services was approximately $50,000.

Mr. Berger was clearly the head of the store and the driving force of the business. SSA cannot lightly assume that all family members contribute equally, even if equal salaries have been paid in the past. SSA must also take care not to attribute as salary monies that are actually returns to the capital invested in a business.

■ Despite these caveats, there was still substantial evidence to support the ultimate amount found to have been overpaid. Corporate profits and dividends were segregated from the salaries paid to the Bergers, according to the tax returns introduced at the hearing. The salaries paid to the Bergers jointly were large enough that if Mrs. Berger was worth even one-fourth of the combined efforts of the couple, her earnings would have precluded payment of benefits at all times considered here. Her efforts in sales, supervision and management amply justify such a conclusion.

In 1978, Mrs. Berger received $1717 in benefits [5] and could have earned $3240 be-

---

5. This figure is calculated from the statement of monthly benefit amounts contained in the De-

fore her benefits would begin to be diminished. In order for her to owe the entire amount of benefits she received that year, she would had to have performed services with a value of twice the amount of benefits she received plus the amount of exempt wages she was entitled to claim under the Social Security Act. This amounts to $6674 ((2 × $1717) + $3240). Upon reviewing the record, we find there is substantial evidence to support the finding that she performed services of at least that value from August to December 1978.

Applying the same analysis to the remaining years in issue, we find that substantial evidence supports the following conclusions: that in 1979, the value of Mrs. Berger's services was at least $12,426.20 [6]; that in 1980, the value of her services was at least $13,890.40 [7]; that in 1981, the value of her services was at least $19,030.80 [8]; that in 1982, the value of her services was at least $21,489.60 [9]; and that in 1983, the value of her services was at least $22,750 [10]. Because Mrs. Berger could not perform services with these values and receive retirement benefits, the Secretary's determination that Mrs. Berger must repay the retirement benefits she received is correct.

### IV

■■ We also hold without merit Mrs. Berger's contention that the administrative proceedings were unfair because the 1984 information form was used against her interest, and because the ALJ refused to allow her to examine the SSA employee who initially determined that she was overpaid benefits.

Mrs. Berger voluntarily entered her local social security office in August 1984 seeking an increase in her benefits. SSA acted within its delegated authority when it asked Mrs. Berger to complete a standard information form in order to process her request. SSA was under no obligation to warn Mrs. Berger that her admissions might be used to determine that she was not retired during the years she claimed she was.

■ Mrs. Berger also was not deprived of due process by the ALJ's refusal of her request to subpoena the SSA employee who initially determined that she was not entitled to retirement benefits. The Secretary may, on his own initiative or at the request of a party, issue subpoenas for witnesses to appear at administrative hearings "when it is reasonably necessary for the full presentation of a case." 20 C.F.R. § 404.950(d)(1). However, the agency's regulations afford it discretion to deny the request. *Ibid.* A party requesting the issuance of a subpoena must "state the important facts that the witness is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." 20 C.F.R. § 404.950(d)(2).

Mrs. Berger requested a subpoena for the SSA employee on the ground that she could not adequately defend against SSA's valuation unless she knew who wrote the decision, whether that individual was experienced in wage and salary administration, whether the individual was a vocational expert and whether the individual valued her services within the context of the

cember 6, 1984, notice of overpayment. Elsewhere in that notice, SSA states that it should have held back $1697.50. There are similar slight variations between the stated figure and the calculated figure for each subsequent year. (The lower stated amount is given in parentheses in notes 6–10, *infra.*) From an abundance of caution, we have examined the record from the perspective of the higher benefit figure to determine if her earnings were enough to compel repayment of all benefits under all circumstances. The higher figure is used in the text.

6. In 1979, Mrs. Berger's benefits totaled $4473.10 ($4403.60) and the exempt earnings amount was $3480.

7. In 1980, Mrs. Berger's benefits totaled $5085.20 ($5035.40) and the exempt earnings amount was $3720.

8. In 1981, Mrs. Berger's benefits totaled $6765.40 ($5804.70) and the exempt earnings amount was $5500.

9. In 1982, Mrs. Berger's benefits totaled $7744.80 ($6334.90) and the exempt earnings amount was $6000.

10. In 1983, Mrs. Berger's benefits totaled $8075 ($6537.80) and the exempt earnings amount was $6600.

Cleveland market for jewelry salespeople. The ALJ determined that the subpoena was not reasonably necessary for the full presentation of her case, and consequently, denied her request. Presumably, the ALJ did so because Mrs. Berger possessed all the documents that the SSA employee relied on to determine that she was not entitled to benefits, her husband's and her own tax returns and the store sales and wage records. In addition, the grounds Mrs. Berger specified as requiring the subpoena's issuance in order for her adequately to challenge SSA's valuation were grounds that she clearly was able to present at the hearing without the subpoena's issuance, as she was allowed to present the report of a vocational expert valuing jewelry sales clerks' wages in the Cleveland area. The absence of the SSA employee could weaken only SSA's case, not Mrs. Berger's.

Because the ALJ reviewed Mrs. Berger's case *de novo*, he was not bound by the prior SSA valuation. Moreover, the ALJ did not rely on the prior SSA valuation and instead substituted his own, higher, valuation for her services after considering all the evidence presented at the hearing. Accordingly, the ALJ's denial of Mrs. Berger's subpoena request did not prevent her from receiving a fair and full hearing before the ALJ. *Cf. Urban v. Heckler*, No. 86–541, slip op. (D.N.J. April 21, 1987) [Available on WESTLAW, 1987 WL 11,475] (abuse of discretion for ALJ to deny subpoena request from disability benefits claimant seeking to cross-examine authors of medical and vocational reports when ALJ later relied on the reports to deny her benefits.)

For the foregoing reasons, the decision of the district court magistrate upholding the Secretary's determination that Mrs. Berger owes SSA $29,458.90 for overpaid retirement benefits from 1978 through 1983 is AFFIRMED.