**Karen L. PLILEY, Plaintiff–Appellant,**

**v.**

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

**No. 89–1130.**

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 5, 1989.

Decided Nov. 1, 1989.

Karen Pliley, pro se.

Michael L. Shiparski, Asst. U.S. Atty., Office of the U.S. Atty., Grand Rapids, Mich., Donna Morros Weinstein, Chief Counsel, Robert Hanson, Gregory J. Guckenberger, Dept. of Health and Human Services, Office of the Gen. Counsel, Region V, Chicago, Ill., for defendant-appellee.

Before KEITH, JONES, and GUY, Circuit Judges.

PER CURIAM.

Plaintiff-appellant, Karen L. Pliley, appeals the district court's order granting summary judgment for the defendant-appellee, the Secretary of Health and Human Services (Secretary). For the following reasons, we affirm.

I.

After the death of her husband, Pliley started receiving mother's insurance benefits in May 1972. On her application, Pliley agreed to notify the Social Security Administration (SSA) if any of her children were no longer entitled to benefits or if she earned more than the exempt amount. J.App. at 63. On May 8, 1984, SSA notified Pliley of an overpayment made to her in January 1983. *Id.* at 64. She did not object to a reduction in her July 1984 benefits in order to repay SSA.

During January and February 1985, Pliley received $994.00 in benefits. *Id.* at 68. The record indicates that during those two months, Pliley's gross earnings were $674.31 (January) and $709.80 (Febraury). *Id.* at 96. At that time, the monthly exempt amount was $450.00. In March 1985, Pliley's benefits terminated pursuant to 20 CFR § 404.341(b)(2) (1988) because her youngest child turned 16 years of age. On April 11, 1986, Pliley reported that her earnings in 1985 were $7211.00, despite the fact that she did not work in June, July, or August of 1985. Based on this report, on April 26, 1986, the SSA notified Pliley that she was overpaid $905.00 of benefits, and that this money should be returned to the SSA.

At the hearing before Administrative Law Judge (ALJ) W. Baldwin Ogden, Pliley refused to answer many questions about her other sources of income and financial resources on the ground that it was not relevant to the proceeding. Upon examination of the record, the ALJ determined that the SSA's interpretation of the regulations was correct. Consequently, he found that Pliley was overpaid $905.00 in insurance benefits. J.App. at 18. In addition, the ALJ ruled that Pliley was "not without fault" in accepting the overpaid amount. As such, the ALJ ordered Pliley to return $905.00 to the SSA.

The Appeals Council adopted the ALJ's finding that Pliley was overpaid by $905.00, but stated that the ALJ used an improper standard under 20 CFR § 404.507 to determine whether Pliley was "without fault." Instead, the Appeals Council applied the stricter standard specifically authorized in deduction-overpayment cases under 20 CFR § 404.511. Using this standard, the Appeals Council found that Pliley was not without fault, and therefore must repay the money. The United States District Court for the Western District of Michigan, Judge Richard A. Enslen presiding, granted the Secretary motion for summary judgment, thereby affirming the Secretary's decision.

II.

Pliley argues that the district court had no authority to dismiss the complaint on a motion for summary judgment. Generally, she argues that she should be entitled to personally bring her case before a federal judge.

We find that a motion for summary judgment is a proper means for the district court to review the opinion of the Secretary. Under Social Security Act (the Act), at 42 U.S.C. § 405(g) (1982), the district court has the "power to enter, upon the pleadings and transcript of the record, a judgment ... with or without remanding the cause for a rehearing." The district court's review of the evidence is strictly limited to whether there is substantial evidence in the record to support the Secretary's decision. Therefore, while the Act does not explicitly provide a summary judgment procedure, such a procedure is consistent with the limited scope of judicial review by the district court in Social Security cases.

In *Califano v. Yamasaki*, 442 U.S. 682, 700, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979), the Supreme Court determined that actions brought under the Social Security Act are subject to the Federal Rules of Civil Procedure. Though *Yamasaki* involved a class action suit, the Act is similarly subject to Fed.R.Civ.P. Rule 56 (summary judgments). In *Kistner v. Califano*, 579 F.2d 1004 (6th Cir.1978), though vacating a *sua sponte* grant of summary judgment by the district court, this Court noted that summary judgment is a proper procedure, provided that the requirements of Rule 56 are met and the party against whom summary judgment is to be entered has sufficient notice and an adequate opportunity to show why summary judgment should not be granted. In the instant case, the district court was able to examine a complete record, and found no disputes as to material fact. In addition, Pliley had two months notice of the motion for summary judgment and an opportunity to respond. Upon review of the record, we find that the district court's grant of summary judgment was appropriate.

III.

Pliley attacks two findings of the Secretary: that there was an overpayment of $905.00 to Pliley; and that Pliley was "not without fault." Our review is limited to determining whether the Secretary's determination is supported by substantial evidence in the record. *Burger v. Secretary of Health and Human Services,* 835 F.2d 635, 638 (6th Cir.1987). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 638–39 (citation omitted). "Even if the court might arrive at a different conclusion, the decision must be affirmed if supported by substantial evidence." *Id.* at 639 (citation omitted).

A.

Pliley first argues that the ALJ misinterpreted the Social Security regulations. Generally a recipient of insurance benefits is entitled to the full amount of benefits, unless the earned income during the year is above a statutory exempt amount ($5400 in 1985). When earnings are above that exempt amount, benefits are reduced $1 for each $2 earned above the limit. Section 404.435 provides a special monthly rule for cases where the annual amount is not relevant:

> (a) ... no matter how much a beneficiary earns in a given taxable year, no deduction on account of excess earnings will be made in the benefits payable for any month—
>
> (1) In which he or she was not entitled to a monthly benefit;
>
> * * * * * *
>
> (7) Which was a "nonservice" month ... in the beneficiary's "grace year" ...

20 CFR § 404.435 (1988). A nonservice month is a month where the beneficiary is not self-employed and does not earn wages more than the monthly exempt amount for that month. A termination "grace year" is the year in which benefits are terminated. Pliley contends that the special monthly rule should apply in her case since she did not work in June, July, and August.

The ALJ correctly ruled that the special monthly rule did not apply to Pliley because in the two months of 1985 in which she received benefits, she earned over the exempt amount of $450.00. J.App. at 16. Further, the ALJ determined that the June–August non-service months were not relevant to the overpayment determination because the benefits had expired in March. As a result, the ALJ applied the annual excess earnings test, and determined that Pliley was overpaid $905.00. This was calculated by dividing her annual earnings over the exempted amount, or $1811.00, by two (the effective tax rate—$1 withheld for each $2 earned). *Id.* at 17. Thus, we find that substantial evidence supports the ALJ's determination that the SSA overpaid Pliley.

B.

The Act gives the Secretary discretion to waive recovery if (1) the beneficiary is "without fault," *and* (2) if recovery would either "defeat the purpose" of the Act or would be "against equity and good conscience." 42 U.S.C. § 404(b). Under 20 CFR § 404.511, a claimant is considered "not without fault" if the SSA has "evidence of a lack of good faith or *failure to exercise a high degree of care.*" (Emphasis added). Pliley argues that even if she was overpaid, she was "without fault", and as such, should not be required to repay the money. She relies on 20 CFR § 404.510(m), which provides that an individual will be considered without fault if it is shown that her acceptance of the overpayment was due to a

> reasonable belief ... that earnings from employment ... after the termination of entitlement ... in the taxable year in which the termination event occurred would not cause deductions with respect to benefits payable for months in that taxable year prior to the month in which the termination event occurred.

The Appeals Council ruled that Pliley was not without fault for two reasons. First, it ruled that Pliley could not have a reasonable belief that she was entitled to the benefits, as required in section

 

404.510(m), because a pamphlet that she submitted to the court and testified to understand, stated specifically that "earnings for the *entire* year must be counted, including those in months before and after benefits start and in *months after benefits* end." J.App. at 7. Second, Pliley did meet the "high degree of care" required by section 404.511 because she had no basis for estimating her earnings for the entire year of 1985 to be below the statutory limit of $5400, and because she had previously been notified of an overpayment in 1983 due to her excess earnings. *Id.* Given the discretion given to the Secretary as to whether waiver is appropriate and the "high degree of care" required by section 404.511, our review of the record indicates that there is substantial evidence to support the Secretary's determination.

In order to waive recovery, Pliley must prove that recovery would either defeat the general purposes of the Act, or be against equity and good conscience. *Sierakowski v. Weinberger,* 504 F.2d 831, 836 (6th Cir. 1974). She has shown neither. Section 404.508(a) defines situations which "defeat the general purposes of this [Act]" as those situations where recovery would "deprive a person of income required for ordinary and necessary living expenses." Since Pliley refused to provide information concerning her income and financial resources at the hearing, she has not demonstrated that recovery would impose such a burden upon her. Similarly, Pliley has failed to prove that recovery would be "against equity and good conscience," as defined in 20 CFR 404.509—cases where a person, because of the overpayment, "relinquished a valuable right" or "changed his or her position for the worse." Although Pliley asserted that generally the Social Security system was inequitable, she failed to show either circumstance specified in section 404.509.

### C.

Pliley also makes general comments about the inequities of the Social Security system toward widows, the unfairness of the change in the law to terminate benefits when the youngest child in care reaches 16

years of age instead of 18 years of age as under the previous law, and the lack of publication of specific cuts in Social Security benefits in publications such as *The New York Times.* These complaints are more properly directed to Congress and the President rather than to this court.

### IV.

Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.