**G.M. POINTER, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 3:92–CV–1468–G.**

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 7, 1993.

Richard Scott Steinbach, Steinbach & Steinbach, Dallas, TX, for plaintiff.

Rebecca A. Gregory, Asst. U.S. Atty., Gayla Fuller, Chief Counsel, Joanna Tate, Asst. Chief Counsel, Region VI, Dallas, TX, for defendant.

## MEMORANDUM ORDER

FISH, District Judge.

This Social Security benefits case is before the court on cross motions for summary judgment. For the reasons stated below, the motion of the defendant Secretary of Health and Human Services ("Secretary") is granted and the motion of the plaintiff G.M. Pointer ("Pointer") is denied.

### I. BACKGROUND

In an application for retirement insurance benefits filed on July 31, 1990, Pointer indicated that he was born on June 2, 1926. In a Corporate Questionnaire submitted on April 18, 1990, Pointer stated that he was president and treasurer of Heritage Building Company ("Heritage"), a Subchapter S corporation. He stated that he had earned $3,829.00 per month prior to his retirement but did not earn any salary thereafter. He further stated that his income after retirement consisted of payment on two notes in the amounts of $3,952.50 and $11,071.67 per month respectively, or slightly over $15,-000.00 per month in total. The questionnaire also reflected the following facts: that Pointer owned the property where the business was located; that his daughter and son-in-law were vice presidents of the company, both before and after his retirement; that he remained a member of the board of directors after retirement; that he continued to make the major operating decisions and to work four days per week, two hours per day, as he had done before retirement; that no one else assumed his duties after he retired; and that he retained the authority to sign checks on behalf of the corporation and final decision-making authority for the business. Furthermore, in a report of contact dated August 8, 1990, Pointer supplemented these facts by stating that he owned all of the corporate stock and did not plan to relinquish control of the business until it was sold.

On August 22, 1990, the Social Security Administration ("SSA") notified Pointer that his application for retirement benefits was approved but that he would not receive any checks immediately because he continued to work. The SSA valued Pointer's services at $3,829.00 per month, an amount equal to his pre-retirement salary, because Pointer rendered the same services and worked the same hours after April 1990 as he did before April 1990.

Pointer requested reconsideration of the SSA's determination. On November 5, 1990, the SSA Reconsideration Section determined that Pointer was not retired for purposes of receiving retirement benefits. The SSA asserted that it had the authority to question whether Pointer's real earnings were substantially higher than those reported because he retained full control of Heritage and was still performing services for the corporation. The Reconsideration Section concluded that Pointer was still actively running the company and generating income as the primary decision-maker.

Pointer then requested and received a hearing before an administrative law judge ("ALJ"). The hearing was held on May 21, 1991. At the hearing, Pointer waived his right to counsel and testified that Heritage no longer did any building, but collected rent from property owned by him. Pointer stated that his duties as president and treasurer of the company included hiring and firing employees, managing rental properties, and signing checks drawn on the corporate bank account. Pointer testified that his duties did not change after his retirement, although he did not thereafter draw a salary. Pointer asserted that his salary could also be considered a return of capital. Pointer's certified public accountant testified that Heritage had no source of income other than rental income it received from property that Pointer owned.

By a decision dated July 25, 1991, the ALJ found that Pointer was not entitled to receive retirement benefits during any month of 1990 because he had failed to prove that he had retired. The ALJ cited *Berger v. Secretary Of Health And Human Services*, 835 F.2d 635 (6th Cir.1987), for the proposition that the true value of services rendered is the appropriate test of earnings and that the Secretary can look behind the salary claimed

by a family member working in a family business. Looking at the realities of Pointer's employment, the ALJ found that the substance of Pointer's situation was that he could control both the amount and reported character of what he was paid. The ALJ found that Pointer's services were worth the same after retirement as they were before retirement, $3,829.00 per month, because he "continued to work the same hours, perform the same functions and continue as president and treasurer of his company after April, 1990." He therefore concluded that Pointer was not retired within the meaning of the Social Security Act ("Act").

Pointer then filed a request for review with the Appeals Council. His request was denied on May 22, 1991. The Appeals Council noted that Pointer's receipts from Heritage were presumed to be wages, and that Pointer had not carried his burden of proof to show that he was not receiving wages. Therefore, the ALJ's decision became the final decision of the Secretary for purposes of judicial review. Having exhausted his administrative remedies, Pointer appeals to this court under 42 U.S.C. § 405(g).

## II. *ANALYSIS*

### A. *Standard of Review*

■ Judicial review of the ALJ's findings is limited by statute. *Bradley v. Bowen,* 809 F.2d 1054, 1057 (5th Cir.1987). The court reviews the ALJ's factual findings using the substantial evidence standard. *Harper v. Sullivan,* 887 F.2d 92, 95 (5th Cir.1989). This court does not reweigh the evidence or retry the issues. *Bradley,* 809 F.2d at 1057. Substantial evidence is defined as relevant evidence that a reasonable mind would accept as sufficient to support a conclusion. *Id.* In contrast, the court reviews the ALJ's legal conclusions *de novo. Id.*

■ In applying the substantial evidence test to the factual findings, the court can find that substantial evidence is lacking only where there is a conspicuous absence of credible choices or where no contradictory evidence exists. *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir.1988) (quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983)).

However, the standard of review is not a rubber stamp for the Secretary's decision. *Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir. 1985) (quoting *Tome v. Schweiker,* 724 F.2d 711, 713 (8th Cir.1984)). The reviewing court does not simply search the record for evidence to support the Secretary's findings. *Id.* The court must consider the whole record, including those facts which detract from the substantiality of the evidence supporting the findings. *Id.*

■ If the reviewing court determines, however, that the evidence supporting the Secretary's decision is substantial, then her findings are conclusive. *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir.1981). Once the court decides that a reasonable person would find the evidence adequate to support the conclusion, it is foreclosed from substituting its own judgment for that of the Secretary. *Id.* This holds true even if the reviewing court believes that the evidence points toward a wholly different finding. *Id.*

### B. *Old–Age Benefits*

Claimants age 62 or over who have worked the required number of quarters and who make application to the SSA are eligible for old-age benefits. 42 U.S.C. § 402(a). Deductions are made, however, when a claimant earns more than a specified exempt amount. 20 C.F.R. §§ 404.415, 404.416, 404.430, 404.-434 (1993). Earnings beyond this exempt threshold are referred to as excess earnings.

Two types of income are considered as earnings for the purpose of calculating old-age benefits: (1) wages for services rendered for the year, 20 C.R.F. § 404.429(a); and (2) net earnings from self-employment for the taxable year, minus any net loss from self-employment for the same taxable year. 20 C.F.R. § 404.429(b). A claimant who owns a trade or business is not considered to be engaged in self-employment if he or she does not render substantial services to his or her trade or business. 42 U.S.C. § 403(f)(1)(E).

There is a statutory presumption, however, that a claimant has rendered services for wages in excess of the exempt amount and has engaged in self-employment, that is, rendered substantial services to his or her trade

or business, until he or she proves otherwise to the satisfaction of the Secretary. 42 U.S.C. § 403(f)(4). Therefore, the burden of proof lies with the claimant to show that money received from an employer was not for services rendered and money received from a trade or business was not in return for substantial services.

Wages are defined as remuneration paid to an employee for employment unless specifically excluded. 20 C.F.R. § 404.1041(a). The Act specifically regards officers of corporations as employees, even if that officer would be self-employed at common law. 42 U.S.C. § 410(j)(1); 20 C.F.R. §§ 404.1006, 404.1007.

Net earnings from self-employment, on the other hand, are defined as the gross income from carrying on a trade or business as figured under the Internal Revenue Code ("Code") less the deductions attributable to that trade or business allowed by the Code. 20 C.F.R. § 404.1080(a)(1). In general, rental income, dividends, and interest are excluded when determining net earnings from self-employment. 20 C.F.R. §§ 404.1082, 404.-1083.

■ The Secretary has the power to examine the substance over form of business transactions and relationships under the Act. *Martin v. Sullivan,* 894 F.2d 1520, 1532 (11th Cir.1990); *Heer v. Secretary of Health and Human Services,* 670 F.2d 653, 655 (6th Cir. 1982); *Runey v. Richardson,* 357 F.Supp. 482, 485 (D.S.C.1972). In an appropriate case, the Secretary may re-classify dividends or other payments from a corporation as wages. *Rebak v. Matthews,* 438 F.Supp. 668, 673 (S.D.N.Y.1977); *Weisenfeld v. Richardson,* 463 F.2d 670, 672 (3rd Cir.1972); *Ludeking v. Finch,* 421 F.2d 499, 502 (8th Cir. 1970); *Owens v. Sullivan,* 790 F.Supp. 195, 197 (E.D.Ark.1991).

■ Here, the Secretary determined that for the year 1990, Pointer was eligible to receive $864.60 per month in retirement benefits if he did not earn in excess of the exempt amount. Pointer's monthly exempt amount for 1990 was $570.00 per month or $6,840.00 per year. According to the Secretary, Pointer's benefits would be reduced to zero if Pointer earned as much as $27,591.00 in 1990. Since Pointer does not challenge these figures, the court accepts them as correct.

The Secretary also determined that Pointer earned $45,948.00 in 1990, an amount large enough to preclude the payment of any retirement benefits for that year. Pointer does not contest the classification as salary of the $3,829.00 per month he received from Heritage in the first three months of 1990. What he does dispute is the classification as salary or earnings, for purposes of determining old-age benefits, of part of the $15,000.00 per month he received beginning in April 1990. The question before the court, then, is whether the Secretary's conclusion that $3,829.00 per month of the $15,000.00 per month Pointer received from Heritage between April and December of 1990 should be classified as earnings for old-age benefits purposes is supported by substantial evidence. The court is of the opinion that it is.

### C. *Wages vs. Earnings From Self–Employment*

#### 1. *Pointer's Contention*

Pointer contends that the money paid to him from Heritage is derived from rental income and notes receivable and should be excluded from the calculation of his earnings for old-age benefits because they are excluded when calculating net earnings from self-employment. The flaw in Pointer's argument is that Pointer is not self-employed. Pointer is an employee of Heritage because he receives money from Heritage and is a corporate officer. 42 U.S.C. § 410(j)(1); 20 C.F.R. §§ 404.1006, 404.1007. He is presumed, then, to have performed services for his remuneration until he proves otherwise. 42 U.S.C. § 403(f)(4)(B); 20 C.F.R. § 404.-435(f) and § 404.429(d). The burden is on Pointer to show that the money he received from Heritage was not for services rendered. The nature of the income to Heritage is not relevant to the question of Pointer's excess earnings.* This is true even if the wages are

---

\* 26 U.S.C. § 1366 allows the character of income to pass through to the shareholders in a Sub-chapter S corporation. However, the pass-through is for tax purposes only and not for the

paid out of corporate income which was itself generated by real estate rentals. *Rebak,* 438 F.Supp. at 674. Even if Pointer were not presumed to be an employee, other factors also lead to the conclusion that he is not self-employed.

First, Pointer is not in a trade or business as set forth in the regulations. Although net income from self-employment is the net income from a trade or business, a trade or business can only be carried on as an individual or as a member of a partnership. 20 C.F.R. § 404.1066. Heritage is a Subchapter S corporation rather than a sole proprietorship, and the sole shareholder of a Subchapter S corporation is not in a partnership with the corporation. *Katz v. Sullivan,* 791 F.Supp. 968, 979 (E.D.N.Y.1991); 20 C.F.R. § 404.1081(f) (partnerships does not include corporations). Thus, by definition, Pointer is not in a trade or business.

Moreover, the Act considers a trade or business to be one the income from which is included in the claimant's net earnings or net loss from self-employment for tax purposes. 42 U.S.C. § 403(f)(4)(A). The Internal Revenue Service, however, specifically excludes income from a Subchapter S corporation from net earnings from self-employment for self-employment tax purposes. Revenue Ruling 59–221 states:

> [w]here a small business corporation elects under section 1372 of the Internal Revenue Code of 1954 not to be subject to Federal income tax, the amounts of its income which are required to be included in each shareholder's gross income do not constitute "net earnings from self-employment" to such shareholder for Self Employment Contributions Act purposes.

1959–1 C.B. 225. Therefore, any monies Pointer receives from Heritage can not be classified as earnings from self-employment for the purpose of calculating old-age benefits. Rather, monies received by Pointer from Heritage are either wages to an employee or dividends to a shareholder. *Katz,* 791 F.Supp. at 980, 982.

Finally, Pointer has enjoyed the benefits of the corporate form since 1984 and cannot now deny its existence. He has had the benefit of limited liability without double taxation. He has avoided the quarterly estimation and payment of self-employment taxes. In addition, he presumably relied on Heritage's validity when establishing his employment history in order to qualify for old-age benefits in the first place. He cannot now claim that it was all a sham. *Rebak,* 438 F.Supp. at 674; *Katz,* 791 F.Supp. at 984. Pointer's contention is without merit for all the above reasons.

### 2. *The ALJ's Findings*

The ALJ used a self-employment analysis in part of his decision. He cited 42 U.S.C. § 203(f)(4)(A) for the proposition that one is presumed to have engaged in self-employment in any given month until it is shown to the satisfaction of the Secretary that such individual rendered no substantial services to any trade or business, the net income or loss of which is includible in computing his net earnings or net loss from self-employment for any taxable year. He then went on to apply the substantial services test set forth in 20 C.F.R. §§ 404.446(a) and 404.447 to determine that Pointer was not retired. ALJ decision 1–3.

As noted above, Pointer is not self-employed. Therefore, the ALJ used an incorrect standard when reviewing Pointer's claim. The appropriate process in this case would have been to determine what portion, if any, of the monies received by Pointer from Heritage could Pointer prove were not wages for services rendered. However, whether determining whether a claimant performed substantial services in a trade or business or determining whether a claimant's income was derived from wages for services rendered, the factual question is the same. Did the claimant work for the money he or she received? The ALJ answered this question in the affirmative. The burden is on Pointer to show that he did not, and he has not sustained this burden.

purpose of determining excess earnings under the Social Security Act. 26 U.S.C. § 1371(a)(1) (unless specifically stated, Subchapter S corporations are ruled by Subchapter C, as ordinary corporations).

206

The ALJ cited *Berger,* above, 835 F.2d 635, for the proposition that the value of services rendered is the true test for excess earnings calculations. In *Berger,* the Sixth Circuit used the substantial services test to show that the claimant had worked full time while claiming to be retired. *Id.* at 639. Although the substantial services analysis may not have been necessary in *Berger* because the claimant was presumed by statute to have performed services for her compensation, *Berger* was nevertheless correct in examining the substance of the relationship and finding that the claimant there had earned in excess of the amount allowed by the Act.

The ALJ in the instant case made a similar determination. He specifically found that Pointer's services were worth the same to the corporation after his retirement as when he claimed a salary, viz., $3,829.00 per month. ALJ decision at 4. This finding of fact, which is supported by substantial evidence, is dispositive of the case.

Pointer does not deny that he continued to perform the same services between April and December 1990 for "rents and notes receivable" as he did for wages in the first three months of 1990. He still hired and fired employees and signed checks. He managed rental properties and continued to work the same number of hours as he had before retirement. He made all major operating decisions and stated that he intends to maintain control of Heritage until it is sold. A reasonable person could conclude that $3,829.00 of the $15,000.00 per month Pointer was receiving from Heritage was for wages. The balance of the payments were presumably dividends, which do not count as earnings. *Weisenfeld,* 463 F.2d at 672 (dividends are not wages); 20 C.F.R. § 404.1083 (dividends are not self-employment income). There is more than a scintilla of evidence to support the ALJ's factual conclusion that Pointer's services to Heritage were worth $3,829.00 per month from April to December of 1990. On the other hand, Pointer has made no showing that his services were any less valuable to Heritage after April of 1990 than they were before April of 1990. Pointer's annual earnings in 1990, then, were $45,-

948.00, an amount sufficient to reduce Pointer's benefits to zero for that year.

### III. CONCLUSION

Since Pointer's earnings, as defined by the Act, were in excess of those allowed under the Act, the court is of the opinion that the Secretary's motion for summary judgment should be **GRANTED** and that Pointer's motion for summary judgment should be **DENIED.**

**SO ORDERED.**