Charles B. OWENS, Sr. and Jean W. Owens, his wife, Plaintiffs,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

No. LR–C–90–233.

United States District Court, E.D. Arkansas, W.D.

July 18, 1991.

William C. Brazil, Brazil, Clawson, Adlong, Murphy & Osment, Conway, Ark., for plaintiffs.

Jana K. Brown, U.S. Attorney's Office, Little Rock, Ark., for defendant.

## ORDER

EISELE, Senior District Judge.

Defendant's motion for summary judgment is before the Court. Plaintiffs responded to the motion and seek summary judgment in their favor. This is a Social Security case where plaintiffs seek reimbursement for retirement benefits deducted by the Secretary of Health and Human Services. For the reasons discussed below, the Court will grant the motion in favor of the Secretary.

The issue before the Court is whether there is substantial evidence in the record to support the Secretary's determination that plaintiffs were not entitled to benefits for a three-year period. Pursuant to his determination, the Secretary imposed deductions on plaintiffs benefits in subsequent years to account for overpayments of retirement and wife's insurance benefits in calendar years 1982 and 1983. The Secretary also suspended retirement and wife's insurance benefits for calendar year 1984.

It is well established that, where the Secretary has denied benefits, the Court must affirm the Secretary's decision if it is supported by substantial evidence on the record as a whole. *Kirby v. Sullivan,* 923 F.2d 1323, 1325 (8th Cir.1991); *Sykes v. Bowen,* 854 F.2d 284, 285 (8th Cir.1988). This deferential standard applies to the Secretary's findings of fact but does not apply to the Secretary's conclusions of law. *Luke v. Bowen,* 868 F.2d 974, 976–77 (8th Cir.1989). The Court reviews the Secretary's conclusions of law *de novo.*

Plaintiffs were stockholders, officers, and employees of the Central Insurance Agency ("CIA"), an Arkansas Corporation. Plaintiffs filed their applications for retirement insurance benefits and wife's insurance benefits, respectively, on November 25, 1981. Plaintiffs purportedly retired

from their business in 1981. The applications were granted and plaintiffs began receiving benefits in 1981.

Plaintiffs continued to work for the CIA in subsequent years. Plaintiffs indicated to the Secretary that their work was substantially reduced and that they worked no more than 15 hours a week for the CIA. Plaintiffs continued to work on this "limited" basis until they liquidated the CIA sometime in 1984. Plaintiffs continued to receive retirement and wife's insurance benefits until December 1986. The Secretary notified them in December 1986 that they had been overpaid in previous years. The Secretary subsequently deducted benefits for benefits improperly paid in 1982 and 1983 and suspended benefits for 1984 after making this determination.

Plaintiffs challenged the action of the Secretary. The Social Security Administration upheld its decision on direct review on March 18, 1987 in an administrative appeal.

At plaintiffs' request, an Administrative Law Judge reviewed the Secretary's decision *de novo*. The ALJ initially upheld the decision of the Secretary on June 29, 1988. The ALJ held that Mr. Owens had excess earnings in the years 1982 and 1983. The ALJ also held that Mr. Owens rendered substantial services to the corporation during 1982 and 1983, notwithstanding Mr. Owens' protests to the contrary.

At the request of plaintiffs, the Appeals Council remanded the case to the ALJ for a rehearing on specific issues. The Appeals Council concluded that the ALJ had to make an estimate of earnings for the purpose of determining what level of deduction to make against plaintiffs' future benefits. In the alternative, the Appeals Council asked the ALJ to make findings concerning Mr. Owens' purported retirement.

Another ALJ on July 28, 1989 affirmed the earlier decision and made the specific findings requested by the Appeals Council. The ALJ held that plaintiffs were not entitled to retirement or wife's benefits for 1982 and 1983 because Mr. Owens made at least the minimum amount required to preclude both Mr. and Mrs. Owens from entitlement to any benefits in each of those years. The ALJ also held that deductions were properly imposed against plaintiffs' benefits for 1984 due to excess earnings.

Plaintiffs appealed this decision to the Appeals Council. The Appeals Council affirmed the ALJ's decision on February 26, 1990 and amended the ALJ's findings. The Appeals Council found that Mr. Owens made $34,800.00 in each year, 1982, 1983, and 1984. The instant appeal was filed in this court on April 12, 1990 pursuant to 205(g) of the Social Security Act, 42 U.S.C. sec. 405(g).

Plaintiffs contend that they did not receive wages beyond the maximum amount permitted by section 203(a), 42 U.S.C. sec. 403(a), in 1982, 1983, and 1984. Plaintiffs argue that they changed the corporate structure of the CIA in 1982 to create a "Subchapter S Corporation." This corporate form, plaintiffs' allege, required them to report the income of the corporation as their personal income in 1982, 1983, and 1984. They reported income from the corporations as dividends from their stock in the CIA for those years. Plaintiffs further allege that they sold the corporation in early 1984 and that the capital gains from the sale are properly reported as such on their 1984 income taxes.

Plaintiffs, in their brief, do not challenge the factual findings of the Secretary, *per se*. Rather, plaintiffs seek to challenge the legal basis for the Secretary to re-classify dividends paid by the subchapter S corporation as wages paid in remuneration for services rendered to the corporation.

■ The Eighth Circuit has already considered the legal issue posed by plaintiffs. In *Ludeking v. Finch*, 421 F.2d 499 (8th Cir.1970), the Eighth Circuit directly held that the Secretary of the Social Security Administration may re-classify distributions of a subchapter S corporation from dividends to wages for the purpose of determining whether a benefits claimant had earnings in excess of the maximum permitted. The Eighth Circuit upheld the Secretary's determination that the benefits would have to be reduced for the years in which plaintiff Ludeking received "divi-

dends" from his subchapter S corporation where the "dividends" were, in reality, remuneration for services rendered.

The Court sets out a significant part of that opinion because it applies directly to this case:

> Section 403(b) authorizes and directs the Secretary to deduct from any benefits payable under sec. 402(a) any excess earnings as defined in sec. 403(f)(3) which, for the period under consideration, would be earnings in excess of $1200.00 per year [for the year 1964] ...; and earnings under sec. 403(f)(5)(A)(i) covers "wages for services rendered in such year and * * * net earnings from self-employment * * *."

> ... [W]e think it is the intendment of the Social Security Act that the Secretary has authority to determine what constitutes wages under the Social Security Act, and that this authorization is essential to the Secretary in carrying out his duties under the Social Security Act, and in particular sec. 403(b) and related sections. It would appear that he has the authority to consider substance over form and to evaluate the realities of a transaction, and unless there is some specific legal prohibition against his actions or an abuse of discretion, his decision should stand....

>      *    *    *    *    *    *

[Plaintiff] Ludeking claims that the Government's position would defeat the purpose of Subchapter S by reconstituting dividends into wages. It is true that Subchapter S enables persons with moderate incomes to choose the protection of a corporate structure without paying what some feel is a prohibitive double tax, but this policy is not affected by the result reached in this case. Subchapter S relates solely to taxation and the treatment of income from certain types of designated legal entities, and is not at all concerned with what constitutes income, wages, or salary under the Social Security Act. Furthermore, Subchapter S legislation was enacted in 1958 independent of and subsequent to the Social Security Act of 1935.

>      *    *    *    *    *    *

> ... The narrow issue in this case, however, is whether a person who receives Subchapter S distributed dividend income, a part of which at least is in exchange for services rendered, is the recipient of wages. We believe the scheme and purpose of the benefit provisions of the Act require on the basis of fairness and equality of treatment that some of the distributed Subchapter S dividends might properly be considered by the Secretary to be wages.

*Id.*, 421 F.2d at 502–504; *accord, Spicer Accounting, Inc. v. United States*, 918 F.2d 90 (9th Cir.1990) (payments made to principal shareholder of subchapter S corporation were "wages" not "dividends" for purposes of FICA and FUTA taxes notwithstanding appellation made by corporation); *Radtke v. United States*, 895 F.2d 1196 (7th Cir.1990) ("dividends" of subchapter S corporation made to sole director and shareholder were "wages" subject to social security and unemployment taxes).

Plaintiffs cite several tax court opinions which they say support their claim. All three are distinguishable. In *Migliore v. Comm'r of Internal Revenue*, 36 T.C.M. (CCH) 1004, T.C. Memo 1977–247 (July 28, 1977), the Tax Court acknowledged that dividends from a subchapter S corporation could be construed as "wages," i.e., compensation for services. The Tax Court stated therein:

> [P]etitioners have failed to show that the dividends received, actually or constructively, were paid to them in lieu of reasonable compensation....

>      *    *    *    *    *    *

While Mr. Migliore did testify that his salary was not unreasonably high, there is no evidence whatever indicating that the salaries received by petitioners (or either of them) were unreasonably low. Consequently, we are unable to conclude that the dividends received by petitioners, actually or constructively, were received in lieu of reasonable compensation for services. The distributions in ques-

tion, therefore, were out of the earnings and profits of R & G Sales and do not constitute earned income for purposes of section 1348.

*Id.* Thus the Tax Court explicitly recognized the possibility that subchapter S corporation dividends *may* be construed as "wages." The Tax Court's opinion in *Migliore* agrees with the Secretary's analysis herein: the determination of whether distributions of a subchapter S corporation are dividends or wages depends on the circumstances of each case. The Secretary must carefully review the facts; the shareholders' or corporation's name does not control.

The other cases plaintiffs cite rely on reasoning similar to that used in *Migliore*. *Gurentz v. Comm'r of Internal Revenue*, 37 T.C.M. (CCH) 1027; T.C. Memo 1978–238 (June 26, 1978) ("case is indistinguishable from *Migliore*"); *Paula Construction Company v. Comm'r of Internal Revenue*, 58 T.C. 1055 (September 28, 1972) (close scrutiny given to facts where sole shareholders in complete control of company seek to claim deduction for "compensation" when earnings were distributed as dividends; denying deduction on facts of case); *Bramlette Building Corporation, Inc. v. Comm'r of Internal Revenue*, 52 T.C. 200 (May 5, 1969) (same; denying claimed salary deduction because facts showed that petitioner was cash basis taxpayer and did not pay salary to principal shareholder). The cases do not establish the principal plaintiffs seek to establish: i.e., that the distribution of dividends by a subchapter S corporation are *not* compensation for services rendered. The cases hold, uniformly, that the distributions of a subchapter S corporation are exclusively in the control of the corporate shareholders who are both officers and employees. Therefore, the cases hold, distributions of a subchapter S corporation are subject to very careful scrutiny by the government.

■ In the instant case, the record indicates that Mr. and Mrs. Owens were co-owners of the CIA. They converted the corporation to a subchapter S corporation on the advice of their accountant and in preparation for their retirement.

Mr. Owens testified that he retired in 1981 but that he continued to work for the CIA on a part-time basis until 1984. Mr. Owens reported receiving $4,440.00 in wages in 1982, $4,920.00 in wages in 1983, and $5,160.00 in wages in 1984. Mrs. Owens reported receiving $4,343.00 in wages in 1982, $4,920.00 in wages in 1983, and $5,160.00 in wages in 1984. All wage income was attributable to the CIA. These amounts contrast with the wage amounts reported on their 1981 income tax return: $38,400.00 for Mr. Owens and $3,600.00 for Mrs. Owens.

The maximum amount of wages a retired individual could receive and still continue receiving the full amount of their social security retirement benefits was: $4,440.00 in 1982; $4,920.00 in 1983; and $5,160.00 in 1984. 42 U.S.C. sec. 403(b).

Mr. and Mrs. Owens also reported receiving dividends of $42.00 from the CIA in 1981; $520.00 from the CIA in 1982; and $95,255.00 in 1983. Mr. and Mrs. Owens also reported receiving $160,245.00 as long term capital gains on the $398,497.00 sales price of the CIA in 1984.

The CIA did not change substantially during 1982, 1983, and the early part of 1984. The history of the CIA supports the contention of the Secretary that Mr. Owens did not significantly change the amount of time he spent on the business after his purported retirement. The CIA, an insurance and real estate firm, was largely built and run by Mr. Owens. The CIA reported gross profits of $201,172 in 1981; $188,483 in 1982; and $143,851 in 1983. This is consistent with Mr. Owens' claim that he did not seek new business during this time, but that he did seek to renew the insurance policies of his current clients. The Secretary determined that more than 15 hours per week would be needed to support this level of renewals. No one, apart from Mr. Owens, had the experience, ability, or authority to run the business after Mr. Owens purportedly retired in 1981. Mr. Owens' son, hired in 1979, left the business in May or June of 1982. Another individual, Carl Johnson, was hired after that, in August, 1982. Mr. Johnson subsequently left

the CIA in November, 1983. Throughout this time, Mr. Owens retained the authority to sign checks, contracts, and other documents on behalf of the corporation. Mr. Owens testified repeatedly that he handled the renewals for the CIA while the other non-secretarial employees, i.e., his son and Mr. Johnson, sought out new business.

The Secretary found that Mr. Owens spent more than 15 hours per week working for the CIA because no one else could have sustained the business during that time. The Secretary also found that Mr. Owens received "dividends" from the corporation in lieu of compensation for services rendered. Mr. Owens reported on his 1982 personal income taxes that he spent "all of his time" working for the CIA. Mr. Owens claimed at the hearing that that statement was in error. The Secretary apparently disagreed with Mr. Owens' hearing statement but agreed with his income tax statement.

The Secretary also found that the 1984 sale apparently was not an arm's length transaction between a bona fide purchaser and the seller. The Owens reported to the Secretary that the sale occurred in February, 1984. However, the Owens themselves signed the documents liquidating the corporation on May 1, 1984. Moreover, as of 1986, Mr. Owens reported that he was a "supervisor" for Executive Underwriters, the corporation that purchased the CIA. The Secretary determined that Executive Underwriters and the persons who purchased the CIA were actually employees of Mr. Owens.

Based on the foregoing, and the remainder of the record not set out herein, the Secretary determined that Mr. Owens actually earned $38,400 for each year in question, i.e., 1982, 1983, and 1984. The "salaries" for Mr. Owens' services were unreasonably low and the dividends were actually compensation for services rendered in 1982 and 1983. The sale of the CIA was structured in a manner to compensate Mr. Owens for services he performed in 1984 as well. Thus the Secretary determined that deductions from future benefits were proper for benefits improperly paid in 1982 and

1983 and that suspension of benefits was proper for 1984.

The Court concludes that the Secretary had the authority to re-classify the distributions of the subchapter S corporation from dividends to wages. The Court also concludes that the Secretary's determinations are supported by substantial evidence on the record as a whole. Plaintiffs apparently do not dispute the weight of the evidence.

IT IS THEREFORE ORDERED that plaintiffs' motion for summary judgment, docket no. 17, be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that the Secretary's motion for summary judgment, docket no. 13, be, and it is hereby, GRANTED.