**Helen B. KATZ, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. CV 89–3538.**

United States District Court, E.D. New York.

Dec. 20, 1991.

---

Stephen C. Herman, Hempstead, N.Y. (Bernard C. Medintz, of counsel), for plaintiff.

Andrew J. Maloney, U.S. Atty., E.D. New York, Brooklyn, N.Y., Stephen J. Riegel, Asst. U.S. Atty., for defendant.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Louis W. Sullivan, M.D., Secretary of Health and Human Services ("Secretary"), defendant, having moved for judgment on

the pleadings pursuant to Fed.R.Civ.P. 12(c), in accordance with the Secretary's final determination dated August 21, 1989, and

Magistrate Judge Michael L. Orenstein having filed his report dated October 2, 1990, and

The Secretary having objected to the finding that the Secretary's March 30, 1987 determination reinstating the Secretary's determination of May 31, 1986, holding that Katz's net earnings from self-employment for 1985 were $10,993.00 is the final determination,[1] it is hereby

ORDERED that the Secretary's objections be and the same are overruled, and it is further

ORDERED that the report of Magistrate Judge Michael L. Orenstein be and the same is adopted as the findings of the court, and it is further

ORDERED that the Clerk of the Court enter judgment in favor of the Secretary and against Helen A. Katz, plaintiff, affirming the Secretary's determination that plaintiff's earnings from self-employment for 1986 were $15,128, and it is further

ORDERED that the Secretary's determination that plaintiff's earnings from self-employment for 1985 were $15,480 is reversed and the case is remanded to the Secretary to grant the relief to which plaintiff is entitled based on net earnings of $10,993.05 for the year 1985.

## REPORT

ORENSTEIN, United States Magistrate Judge.

### PRELIMINARY STATEMENT

This is an appeal taken pursuant to § 205(g) of the Social Security Act (the "Act"), as amended by 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services (the "Secretary"). The Secretary found that claimant's deductions of S corporation[1] losses from net earnings from self-employment were improper under the Act. As a result, claimant had earnings in excess of the amount retirees are allowed to earn. Consequently, the Secretary imposed "work deductions" against claimant's old-age benefits.

This action is before the court upon defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

### STATEMENT OF FACTS

Claimant, Helen Katz, became entitled to retirement insurance benefits effective January, 1985. During the years 1985 and 1986, claimant worked as an insurance broker[2] and was a shareholder in the Hamilton Agency Inc. ("Hamilton"), an S corporation. Claimant's 1985 and 1986 federal income tax returns indicate that she reduced her taxable income by deducting losses incurred by Hamilton—the S corporation. For the years 1985 and 1986, claimant reported on her federal income tax returns adjusted gross income of $15,480.00 and $15,128.00, respectively, which included deductions in the amount of $4,904.00 and $4,223.00 representing losses by Hamilton, the S corporation.[3]

For the years 1985 and 1986, claimant reported to the Social Security Administration ("SSA") "net earnings from self-employment" of $10,993.06 and $9,719.00, re-

---

1. The Secretary reversed the May 31, 1986 holding on March 7, 1987, and on March 30, 1987 reversed the March 7, 1987 holding, thereby reinstating the May 31, 1986 determination.

1. The Subchapter S Revision Act of 1982 (Pub.L. No. 97–354) re-labels a Subchapter S corporation as an "S Corporation".

2. Mr. Katz, claimant's authorized representative, states that his wife, is "68 years old, has had several heart attacks, requires daily medication and doctor's visits approximately twice a month,

under continuous medication and drug care, [and] is certified as a handicapped person by her doctor and New York State." (Ex.9). He states that the S corporation was formed in an attempt to ensure a more favorable probate of Ms. Katz' estate upon her death and that she "is a working partner, not an investment seeker" of Hamilton. (AC–1).

3. The validity of these deductions for federal income tax purposes is not in question.

spectively. These amounts represented her annual business income less S corporation losses.[4] Claimant alleges that as a shareholder and a "self-employed" individual working for Hamilton losses charged to the S corporation can be used by the individual claimant to offset her "net earnings from self-employment."

The Secretary on May 31, 1986, through its Northeastern Program Service Center, initially determined that Katz' "net earnings from self-employment" for 1985 was $10,993.00—an amount which reflected the 1985 S corporation loss. (Ex.2). Thereafter, on March 7, 1987, the Secretary, approximately nine and one-quarter months later, reopened and reversed that initial determination of benefits and denied the S corporation deduction [5]. (Ex.3).

Apparently, the claimant thereafter filed a reconsideration appeal based on the March 7, 1987 decision denying S corporation losses.[6] On the basis of the reconsideration appeal, the Secretary reversed itself a second time on March 30, 1987 and found as was originally determined in the Northeastern Program Service Center's May 31, 1986 notice that the claimant's

"net earnings from self-employment" for 1985 should be $10,994.00 [7]. Accordingly, S corporation losses would be credited against Katz' "net earnings from self-employment." (Ex.4).

Notwithstanding the two prior reversals, on February 26, 1988, almost two years after Secretary's initial determination, the Secretary reversed [8] itself one more time finding that S corporation losses should *not* be credited against Katz' "net earnings from self-employment." (Ex.7). Consequently, the Secretary found claimant's "net earnings from self-employment" for 1985 and 1986 to be $15,898.00 and $13,942.00. As a result, the Secretary found that claimant's adjusted net earnings for 1985 and 1986 exceeded the amount allowable for retirees. *See* 42 U.S.C. § 403(f)(8)(D). Therefore, the Secretary imposed work deductions against her benefits to recover the overpayments made in those years.

On April 26, 1988, claimant filed a request for reconsideration. The Secretary's determination on reconsideration was affirmed on November 7, 1988. On Decem-

---

4. Claimant's federal income tax returns indicate that she received no income as wages from Hamilton in either 1985 and 1986, instead, her "net earnings from self-employment" consisted of business income, presumably income derived from her self-employment at Hamilton.

Mr. Katz has continually refused to supply the Secretary with Hamilton's federal income tax returns and also has not provided claimant's complete personal income tax returns. *See* (Ex. 12, 13, AC–1). Schedules C and E for 1985 and 1986 documenting claimant's purported business income and losses were not before the ALJ and are not before this court. *See* (Ex.17).

Mr. Katz asserts that because this case represents a purely legal issue involving a shareholder's use of S corporations losses and because the S corporation return includes tax information of a shareholder who is not before this Court, Hamilton's tax returns are irrelevant and unnecessary and submission of them violates the claimant's right to privacy.

Claimant's failure to provide the SSA with the S corporation's income tax return reinforces the court's concern that claimant as a social security recipient may be impermissibly using the S corporation loss. While the IRS has not questioned the S corporation loss, the SSA should have had the opportunity to examine the basis of the S corporation deduction for the sole pur-

pose of properly calculating "net earnings for self-employment."

5. "A determination, revised determination, decision, or revised decision may be reopened—(a) [w]ithin 12 months of the date of notice of the initial determination for any reason." 20 C.F.R. § 404.988(a). Accordingly, the Secretary's reversal on March 7, 1987 of its initial determination is not at issue.

6. The administrative record does not include a "Request for Reconsideration," Form SSA–561–U2, based on the adverse decision by the Northeastern Program Service Center on March 7, 1987. However, claimant's September 21, 1987 letter indicates that the SSA's March 30, 1987 reversal was based on a claimant initiated reconsideration appeal. (Ex.6). On the basis of that letter, the court concludes that the March 30, 1987 decision was based on a reconsideration appeal.

7. The one dollar difference between the alleged "net earnings from self-employment" amounts calculated by the Reconsideration Panel and the ALJ is apparently due to rounding off of these amounts.

8. Each one of the three reversals was authorized by the Northeastern Program Service Center.

ber 7, 1988, claimant requested an oral hearing before an Administrative Law Judge ("ALJ"), but later waived her right to personally appear and requested that a decision be made based upon the evidence in the record. On May 8, 1989, the ALJ affirmed the Secretary's decision on reconsideration. The ALJ rejected claimant's S corporation deductions and found her "net earnings from self-employment" for 1985 and 1986 to be $15,897.00 and $13,942.00, respectively. The Appeals Council affirmed the ALJ's decision on August 21, 1989.

Thereafter, claimant filed a complaint in the United States District Court for the Eastern District of New York. The instant case was assigned to District Judge Jacob Mishler and referred to the undersigned for a report and recommendation.

Based upon the reasons set forth below, I recommend that the defendant's motion for judgment on the pleadings be affirmed in part and denied in part.

## DISCUSSION

### I. *Standard of Review*

■ The deference accorded to an administrative agency's interpretations depends on the extent to which the matters at issue depend peculiarly on the agency's field of expertise. *See McCuin v. Secretary of Health & Human Services*, 817 F.2d 161, 168 (1st Cir.1987); *Powell v. Heckler*, 789 F.2d 176, 178 (3d Cir.1986). In *Gutierrez v. Bowen*, 702 F.Supp. 1050, 1058 (S.D.N.Y.1989), *rev'd on other grounds*, 898 F.2d 307 (2d Cir.1990), the district court reviewed regulations similar to the "reopening and revision" regulations (the "reopening and revision" regulations) at issue here and gave

the Secretary's interpretation ... less deference, because these regulations engage issues not particularly within the expertise of the agency, as the *McCuin*[9] court correctly pointed out.

*Id.* at 1058 [footnote added]. Although, the Second Circuit reversed the district court, the Second Circuit agreed with both the district court and *McCuin* court in regard to the proper standard of review noting that

the Social Security Act, under whose authority the regulations were promulgated, is a remedial statute, to be broadly construed and liberally applied in favor of beneficiaries. *See, e.g. Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975). We find that it would frustrate congressional objectives in passing such a statute if the ambiguity in the regulations were to be resolved in favor of putting claimants in a state of limbo for at least four years, uncertain of the final outcome of their cases.

*Gutierrez v. Bowen*, 898 F.2d 307, 310 n. 3 (2d Cir.1990) (*quoting McCuin*, 817 F.2d at 174); *see Bersani v. Robichaud*, 850 F.2d 36, 45 (2d Cir.1988), *cert. denied*, 489 U.S. 1089, 109 S.Ct. 1556, 103 L.Ed.2d 859 (1989). As a result, this court in accordance with the above, will give less deference to the SSA's interpretation of the "reopening and revising" regulations.

### II. *1985 S corporation loss: Can the Secretary reopen the March 30, 1987 determination?*

#### A. What regulations govern the reopening of claimant's case?

Katz contends the Secretary's *sua sponte* reopening of her initial benefits determination approximately twenty-one months[10] after a favorable determination

9. *McCuin* held that the claimant and not the Secretary can reopen a case pursuant to 20 C.F.R. §§ 404.987–404.989 under Federal Old–Age, Survivors and Disability Insurance Regulations. The regulations at issue in *McCuin* were the identical regulations at issue here. The regulations in *Gutierrez*, however, referred to Supplemental Security Income for the Aged, Blind, and Disabled. *See* 20 C.F.R. §§ 416.1487–416.-1489. The only difference between the provisions is that the period for reopening in the former is four years, as opposed to two years in the latter.

10. The twenty-one month period is measured from the SSA's "initial determination" on May 31, 1986. SSA regulation 20 C.F.R. § 404.988(b) provides that period governing "reopenings and revisions" under certain conditions is measured four years from the date of the notice of the *initial* determination.

by the Secretary was improper because it violated section 404.989(a)(3). According to claimant, the Administrative Law Judge's decision of May 8, 1989 (the "ALJ Decision") and the Appeals Council's Order of August 21, 1989 (the "Appeals Council's Order") were incorrect in reopening a prior favorable determination more than one year after the initial determination because such determination did not clearly show on its face that an error had been made. 20 C.F.R. § 404.989(a)(3).

Sections 20 C.F.R. §§ 404.987 *et seq.* govern "the reopening and revising [of] determinations and decisions" by the Secretary in connection with old-age insurance benefits. 20 C.F.R. § 404.987. However, the reopening provisions do not specifically refer to which level of the SSA they apply, (*e.g.* field office, regional office, program service center, office of disability determinations, central office, ALJ hearing, and Appeals Council).

■ The regulations governing "reopening and revisions" are not ambiguous; there is simply a total absence of references to any regulation governing SSA "reopenings and revisions" of determinations [11] below the level of the ALJ and Appeals Council. Thus, the SSA's position, as is evidenced in the ALJ Decision and the Appeals Council's Order, that the above regulations apply to all levels of SSA is plainly not inconsistent with the language of the regulations. *See United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977).

In *Butterworth v. Bowen,* 796 F.2d 1379 (11th Cir.1986), the court summarized the "reopening and revision" regulations of 20

The fact that 20 C.F.R. § 404.992 is the only regulation governing *"revised* determinations" and that 20 C.F.R. § 404.988(b) only refers to *"initial* determinations" establishes that each category of "determinations" is governed by separate provisions. Thus, "determinations" termed "initial" as noted in § 404.988(b) should be narrowly limited to include only the SSA's "first" determination. Accordingly, the time period to reopen claimant's case commenced on May 31, 1986. The two reversals of claimant's case on March 7, 1987 and March 30, 1987 must be deemed "revised determinations" and thus

C.F.R. Part 404, albeit in a different context.[12] There, the court noted

[t]he introductory section of Subpart J describes the various component levels of the SSA involved in administrative review and identifies the four levels of administrative rulings on a claim—an initial determination, a reconsideration determination, an ALJ decision, and an Appeals Council decision. 20 C.F.R. § 404.-900. The administrative review regulations are then grouped under different headings to set forth the procedures to be followed at each of these component levels. The reopening and revising regulations are not presented in this format and do not distinguish between procedures at the various component levels although section 404.987's references to reopening "determinations" [footnote omitted] and "decisions" [footnote omitted] indicate that any of the four levels of rulings may be reopened. *See also* §§ 404.905, 404.920, 404.955, 404.981 (describing binding effect of each level of ruling unless appealed or various other actions taken including in each case, the revisions of the ruling). *The opening and revising regulations do not specify, however, which component level within the SSA has jurisdiction to reopen the various levels of rulings.* Rather, these regulations are written in general terms of when "we" may reopen and revise a previous determination or decision. Section 404.901 simply explains that for purposes of Subpart J, '[w]e,' 'us,' or 'our' refers to the Social Security Administration.

*Butterworth,* 796 F.2d at 1386 (dictum) [emphasis added]. The claimant in *Butterworth* had contended

not dates from which the period to reopen can commence.

11. A "determination" means the initial determination or the reconsidered determination. 20 C.F.R. 404.901. A "decision" means the decision made by an ALJ or the Appeals Council. 20 C.F.R. 404.901.

12. In *Butterworth,* the court was deciding whether the Appeals Council can *sua sponte* reopen a claimants case after its sixty day period to revise had ended. 20 C.F.R. § 404.969.

that a reading of the regulations in context indicates that a final ruling—whether a determination or a decision—may be reopened and revised only by a component level which has jurisdiction over the case. He asserts that a common sense reading of the regulation indicates that this jurisdiction has two elements. First, appropriate conditions listed in section 404.988 must exist [in the instant case, "good cause"], and second, the case must be properly before that *particular component level before it may exercise reopening authority.*

*Id.* (dictum) [emphasis added].

■ The *Butterworth* court accepted claimant's position and noted that the "elements necessary for a component level's jurisdiction over a case—the case must be properly before that level either because it made the ruling that is being reopened or because it is a component that has authority to review, and, if necessary revise the determination." *Id.* at 1387. In the instant case, the action taken on claimant's case was in effect a revision of an initial determination by the same component of the SSA—the Northeastern Program Service Center.

Accordingly, deference will be given to the Secretary's interpretation that the provisions governing the "reopening and revising" of the Secretary's decision apply to levels of the SSA below the ALJ and Appeals Council.[13] *See Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Thus, based upon (1) the *Butterworth* analysis of the SSA's regulatory scheme and (2) the need for administrative efficiency in permitting the SSA to revise incorrect determinations and decisions, this court finds that the Northeastern Program

**13.** The SSA's Program Operations Manual System states in GN 04001.020 entitled "Who Can Reopen" that the same level of the SSA which made the determination has the authority to *reopen* it in accordance with 20 C.F.R. § 404.-988.

**14.** The court in *Gutierrez* specifically noted that "[a]lthough we find the reasoning of *McCuin* persuasive, we need not decide the similar issue presented in this case. Rather, assuming, without deciding, that the regulations do authorize the Secretary to reopen the case *sua sponte,* we

Service Center had authority to revise the initial determination of claimant's application.

**B. Can the SSA reopen claimant's case?**

Thus, having concluded that 20 C.F.R. §§ 404.988(b) and 404.989(a)(3) permit the Northeastern Program Service Centers to reopen and revise claimant's benefits, the next question that must be answered is whether the Secretary can *sua sponte* reopen a case.

Regulation 20 C.F.R. § 404.987 provides that:

(a) *General.* Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review. However, a determination or a decision made in your case may be reopened and revised. After we reopen your case, we may revise the earlier determination or decision.

(b) *Procedure for reopening and revision.* You may ask that a determination or a decision to which you were a party be revised. The conditions under which we will reopen a previous determination are explained in § 404.988.

In *Gutierrez,* 898 F.2d at 309–11, the Second Circuit agreed[14] with the holding in *McCuin,* that the "reopening and revision" regulations governing SSA benefit cases must be limited to "reopening and revision" by claimants and do not permit "reopenings and revisions" by the Secretary beyond the sixty day limit in 20 C.F.R. § 404.969.[15] The *Gutierrez* court reviewed the *McCuin* decision stating

examine whether there were sufficient grounds for reopening under applicable regulations." *Gutierrez,* 898 F.2d at 310.

**15.** "Anytime within 60 days after the date of a hearing decision or dismissal, the Appeals Council itself may decide to review the action that was taken. If the Appeals Council does review the hearing decision or dismissal, notice of the action will be mailed to all parties at their last known address." 20 C.F.R. § 404.969.

[t]he *McCuin* court reviewed four distinct interpretations of who may reopen a case within two years of an A.L.J.'s decision pursuant to § 404.987: 1) Only a claimant may reopen; 2) the Appeals Council may reopen sua sponte; 3) Only the A.L.J. may reopen after 60 days; 4) The Appeals Council may reopen only for errors of fact, not law. The court noting that 'there is no reading [of the regulations] which would not stretch the language of the regulations to a considerable extent,' [citation omitted], concluded that only claimants could reopen pursuant to § 404.987. The court noted that: 'the Social Security Act, under whose authority the regulations were promulgated, is a remedial statute, to be broadly construed and liberally applied in favor of the beneficiaries. [citation omitted]. We find that it would frustrate congressional objectives in passing such a statute if the ambiguity in the regulations were to be resolved in favor of putting claimants in a state of limbo for at least four years, uncertain of the final outcome of their cases.' 817 F.2d at 174. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1273 (3d Cir.1987) (following *McCuin* by holding that once the 60-day period during which Appeals Council may choose to review an A.L.J. decision has passed, § 404.969 bars Appeals Council from raising issues not appealed by claimant); *see also De Long v. Heckler*, 771 F.2d 266, 268 (7th Cir.1985) (Posner, J.) (suggesting in dictum that '[t]he word 'However' in [§ 404.987] is particularly suggestive that reopening is intended to be for the benefit of the disappointed applicant only').

*Id.* at 310 n. 3 [bracketed text in original]. Were it necessary to the disposition of this case, this court, while not bound by the *dicta* in *Gutierrez*, would conclude based on both the Second Circuit's language in *Gutierrez* and the rationale of *McCuin* that the Secretary is prohibited from reopening a case after the sixty day period has elapsed. *See contra Campbell v. Bowen*, no. 87–2229, 1988 WL 68813 at *2 (June 8, 1988 E.D.N.Y.) (holding that the Secretary is permitted to reopen a claimant's case *sua sponte* under 404.988 even after the sixty day period).

C. When can the SSA reopen?

■ There is no question that the Northeastern Program Service Center had a right to reopen claimants case on March 30, 1987 and determine that claimant's "net earnings from self-employment" should reflect S corporation losses. The March 30, 1987 determination was within one year of the initial determination. 20 C.F.R. § 404.988(a).[16] Consequently, claimant contends that the SSA's reopening on February 26, 1988 of her case, twenty-one months after the initial determination, violated the one year prohibition of 20 C.F.R. § 404.988(a). Claimant also maintains that since the reopening could not be based on "good cause" which would have permitted reopening for up to four years, only the March 30, 1987 determination decided in her favor should govern her benefit determination.

Section 404.988(b) provides that a determination may be reopened

[w]ithin four years of the date of the notice of initial determination if we find good cause, as defined in § 404.989, to reopen the case.

20 C.F.R. § 404.988(b).[17] The regulations further specify that "good cause" exists if "[t]he evidence that was considered in making the determination or decision clearly *shows on its face that an error was made.*" 20 C.F.R. § 404.989(a)(3) [emphasis added]. The Secretary states in its

16. *See* footnote 10.

17. The Secretary's regulation governing "good cause" states:
   (a) We will find that there is good cause to reopen a determination or decision if—
   (1) New and material evidence is furnished;
   (2) A clerical error in the computation or recomputation of benefits was made; or

   (3) *The evidence that was considered in making the determination or decision clearly shows on its face that an error was made.*
   (b) We will not find good cause to reopen your case if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made.
   20 C.F.R. § 404.989 [emphasis added].

Program Operations Manual that "clear" means "obvious, unmistakable, certain, positive." Program Operations Manual GN. 04010.080 (1985); *see Coates v. Bowen,* 875 F.2d 97 (7th Cir.1989).

"An error on the face of the evidence exists where, on the basis of all the evidence in the file on which the determination or decision was based and any evidence of record anywhere in the Administration at the time such determination or decision, it is clear that the determination or decision was incorrect." *George by George v. Schweiker,* 563 F.Supp. 888, 890 [D.Minn. 1982] [*citing Lauritzen v. Weinberger,* 514 F.2d 561, 563 [8th Cir.1975] [*quoting* Social Security Claims Manual]]; *Munsinger v. Schweiker,* 709 F.2d 1212, 1216 (8th Cir. 1983) (*quoting* Social Security Claims Manual § 7015 [July 1979] ). The error may be legal[18] or factual in nature.[19] *Munsinger,* 709 F.2d at 1216; *Campbell,* 1988 WL 68813 at *3. More specifically, the legal error must be based on an incorrect interpretation of the law as construed at the time of the decision. *Reddington,* 640 F.Supp. at 1008 n. 2. In fact, "good cause" to reopen does not exist, "if the only reason for reopening is a *change of legal interpretation* or administrative ruling upon which the determination or decision was made." 20 C.F.R. § 404.988(b) [emphasis added]. However, SSA regulations

> do not expressly preclude reopening to revise a determination based upon the application of an incorrect legal standard or the misinterpretation of law existing at the time of the determination. The regulations merely prohibit reopening when a change of legal interpretation or

administrative ruling upon which the initial determination was based constitutes the sole basis for reopening. Reopening to change a legal interpretation is precluded because when a question of legal interpretation is involved the evidence considered in making the determination does not clearly show on its face that an error was made. In contrast, when the application of an incorrect legal standard or the misinterpretation of law existing at the time of the determination is involved the evidence clearly shows on its face that an error was made.

*Fox v. Bowen,* 835 F.2d 1159, 1164 (6th Cir.1987).

Thus, the Northeastern Program Service Center invoked 20 C.F.R. § 404.989(a) and reopened *sua sponte* its March 30, 1987 determination based upon " 'good cause' (i.e., a showing that the evidence considered in making the prior favorable determination ... clearly showed on its face that an error had been made)." *ALJ Decision,* at p. 3 and *Appeals Council Order,* at p. 2.

In the instant case, neither the ALJ nor the Appeals Council cited any case law or SSA regulation governing the use of S corporation losses in calculating "net earnings for self-employment." The ALJ in his decision only generally referred to an Internal Revenue Service ("IRS") revenue ruling and an internal SSA Program Operation Manual Rule not adopted through the SSA's congressionally authorized rule making capability. There is no evidence in the record to support the Secretary's contention that the May 31, 1986 or even the March 30, 1987 determination was either a

---

18. *See Overend v. Sullivan,* 879 F.2d 673, 676 (9th Cir.1989) (ALJ incorrectly attributed 1980 wages to 1978 wage base was an "error clear on the face of the documents in the record" constituting "good cause"); *Munsinger,* 709 F.2d at 1214–16 (ALJ committed legal error in finding that settlement of a disputed worker's compensation claim was not a substitute for periodic worker's compensation payments); *Moore v. Sullivan,* 731 F.Supp. 1009, 1013 (D.Kan.1989) (ALJ failure to consider an SSA regulation was "clear error on the record"); *Reddington v. Bowen,* 640 F.Supp. 1005, 1008 (E.D.N.C.1986) (ALJ committed legal error in misclassifying claimant as an "employee" and miscalculating

number of quarters for which claimant was covered).

19. A minority of cases have held that legal error can not provide "good cause" under 20 C.F.R. § 404.989(a)(3). *See Marsh v. Heckler,* no. 82–1122, 1984 WL 48823 at *1 (E.D.Cal. February 14, 1984) (holding error on the face of the evidence does not include legal error); *George,* 563 F.Supp. at 891 (applying Minnesota law rather than Tennessee law in determining whether claimant was equitably adopted was neither a "clear injustice" nor "manifest error," court rejecting legal error as "good cause").

misinterpretation of the law or an erroneous analysis of the law by the Northeastern Program Service Center. *See* 20 C.F.R. § 404.989(a)(3). In fact, the Secretary and the United States Attorney have not provided direct support of what they allege to be the relevant law governing this case. Thus, it can reasonably be concluded that no precedent existed to support the Secretary's February 26, 1988 "reopened and revised" determination holding that S corporation losses can not be used to calculate one's "net earnings for self-employment."

This is simply a case of first impression where the Secretary vacillated between two positions. The court can only presume that the Secretary thoroughly reviewed the entire administrative record and existing SSA regulations before issuing its March 30, 1987 reconsideration decision.

The letter the SSA wrote to claimant on September 15, 1987 further undermines the Secretary's position. In that letter, written sixteen months after the initial determination, the Northeastern Program Service Center rejected its prior favorable determination permitting S corporation losses to be used in calculating her "net earnings from self-employment" and stated that

> [y]ou should be aware that losses from your Subchapter S corporation are not deductible from net earnings from self employment in figuring your total earnings for annual work test purposes. Our records show self employment earnings of $15898.00 and $13943.00 for 1985 and 1986 respectively posted to your account. It *appears* work deductions *should* properly have been assessed based on these reported earnings. However, it is possible that a mistake was made in your manner of reporting. A review of your tax returns is therefore necessary to resolve the issue.

*Letter from SSA to Claimant,* dated Sept. 15, 1987 [emphasis added]. Specifically, the SSA's use of the words "appears" and "should" belie the Secretary's conclusion that there was a clear error on its face.

This type of action is specifically what the SSA's own internal rules prohibit. The Social Security Manual states that

> [a] determination or decision which was reasonable on the basis of the evidence in the file and the statute, regulations, instructions, precedents, etc., existing at the time of the determination or decision was made, will not be reopened merely because there is a shift in the weight of the evidence, a different inference is now drawn from the evidence, a different rule of law would now be applied, or the statute or regulations have been amended, unless such amendment specifically provides.... In such cases, there is no error on the face of the evidence on which the determination or decision was based (i.e., the "record") which would permit reopening.

*Munsinger,* 709 F.2d at 1216 (*quoting* Social Security Claims Manual § 7015 [July 1979]). *See Hall v. Secretary, Department of Health and Human Services,* 774 F.2d 1162 (table) no. 84–5728 (6th Cir. Sept. 17, 1985) (WESTLAW, Federal library, Allfeds file) (court found ALJ's interpretation of statute *reasonable* and thus the Appeals Council's reason for reopening did not constitute "good cause" based on *"clear"* error to reopen case more than two years later).

Because this court does not find that the "prior favorable determination ... clearly showed on its face that an error had been made," the Secretary has failed to establish "good cause" to reopen claimant's case. Thus, the February 26, 1988 determination by the Northeastern Program Service Center violated 20 C.F.R. § 404.989(a)(3). Consequently, this court finds that the March 30, 1987 determination which reinstated the May 31, 1986 initial determination should be deemed the final determination of the Secretary and therefore recommends that the case be remanded to the Secretary to recalculate claimants "net earnings from self-employment" for 1985 in accordance with its March 30, 1987 determination.

However, since the initial determination of claimant's 1986 S corporation deduction was not in her favor, had never been re-

versed and had not been made until September 15, 1987 (Ex.5), the court must decide on the merits the propriety of deducting S corporation losses in the context "net earnings from self-employment."

III. *1986 S corporation losses: Can S corporation losses be used in calculating a claimant's "net earnings from self-employment?"*

■ Claimant, a shareholder and "self-employed" individual working for Hamilton contends that S corporation losses can be deducted from her "net earnings from self-employment" for the purposes of determining her Social Security old-age benefits. Claimant's argument is without legal support.

There is no question that retired beneficiaries may engage in some employment without losing their retirement benefits under the Act. 42 U.S.C. §§ 403(b) and (f). However, retirement benefits will be reduced, if there are excess earnings. 42 U.S.C. § 403(b). The amount that retirees are permitted to earn while still permitted to collect Social Security retirement benefits is governed by statute.[20]

A retiree is found to have excess earnings when in any taxable year "(i) the sum of his wages[21] for services rendered in such year and his *net earnings* from self-employment for such year, minus (ii) any net loss from self-employment" exceed the

maximum allowable. 42 U.S.C. § 403(f)(5)(A) [emphasis added]. SSA defines

> Net earnings from self-employment [as] the gross income, as computed under subtitle A of title 26 ["Code"], derived by an individual from any trade or business carried on by such individual, less the deductions allowed under such subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of ordinary *net income or loss,* ... from any trade or business carried on by a *partnership* of which he is a member.[22]

42 U.S.C. § 411(a); 20 C.F.R. § 404.1080 [emphasis added]. To further clarify, the SSA defines a trade or business as being carried on by "an individual or as a member of a partnership." 20 C.F.R. § 404.-1066.

It is this ability to deduct losses of a *partnership* which Katz is attempting to utilize. *Id.* The ALJ rejected this theory and denied benefits because he found that Katz as a shareholder of and as a "self-employed" individual working for Hamilton was not engaged in a "trade or business carried on as a sole proprietorship or in a partnership with general partners" and that Hamilton, an S corporation, was equivalent to a C corporation for purposes of calculating "net earnings from self-employment."[23] *ALJ Decision,* at p. 2, *see* 42 U.S.C. § 411(a); 20 C.F.R. 404.1066.

---

20. The maximum allowable for 1985 and 1986 for a person of claimant's age was $7,320.00 and $7,800.00, respectively. 42 U.S.C. § 403(f)(8)(D).

21. Performance of services by an individual as an employee, is *not* included in net earnings from self-employment, but rather are "wages for services rendered." *See* 42 U.S.C. §§ 411(c)(2), 20 C.F.R. § 404.1041(a). The term "wages" means remuneration for employment. 20 C.F.R. § 404.1026(a)(2). In the instant case, the Secretary made no finding that Katz' business income was due to "wages for services rendered."

22. Dividends are specifically excluded as part of self-employment income under 42 U.S.C. § 411(a)(2).

23. Once the ALJ found that an "S Corporation" was *not* a partnership or something akin thereto, the analogy between an S corporation and a

partnership was lost and 20 C.F.R. § 404.-1080(b) could not apply. SSA regulation 20 C.F.R. § 404.1080(b) would have permitted losses of a partnership to be utilized in calculating "net earnings from self employment."

If the Secretary had found that Katz' business income constituted wages either in the form of direct salary or of reclassified dividends, Katz could not argue that S Corporation losses should be used in calculating "net earnings from self-employment." *See Spicer Accounting, Inc. v. United States,* 918 F.2d 90 (9th Cir.1990); *Joseph Radtke, S.C. v. United States,* 895 F.2d 1196 (7th Cir.1990). Such a claim would imply that Katz was an "employee" and therefore she could not benefit from the regulations permitting losses "carried on by a partnership of which [she was] a member" to be used in calculating "net earnings from *self-employment." See* 20 C.F.R. § 404.1080(b)(1).

## A. Statutory and Regulatory Analysis

S corporations are *not* referenced in any of the Secretary's regulations concerning old-age benefits. However, the Secretary does define a partnership

> for social security purposes ... [as] one that is recognized as a partnership for income tax purposes.[24] For income tax purposes, the term *partnership* [emphasis in original] includes not only a partnership as known under common law, but also a syndicate, group, pool, joint venture, or other *unincorporated* organization that carries on any trade or business, financial operation or venture, and which is not a trust,[25] estate, or a *corporation*.

20 C.F.R. § 404.1081(f) [footnotes and emphasis added]. The Secretary's definition of partnership specifically includes unincorporated organizations and expressly excludes corporations. *See* 20 C.F.R. § 404.-1081(f); *Rasmussen v. Gardner*, 374 F.2d 589, 594 (10th Cir.1967).

It is significant that the SSA adopted the IRS's definition of partnership in that the IRS Code's reference to an "unincorporated organization" does preclude both "tax exempt corporations" and "S corporations" from being considered partnerships for IRS purposes. *See* 26 U.S.C. §§ 501–528, 1361–1379 (both "tax exempt corporations" and S corporations are governed by different sections of the IRS Code). Thus, the SSA definition of partnership should also preclude an S corporation from being considered a partnership. Further, given the breadth of the Secretary's definition of partnership in 20 C.F.R. § 404.1081(f) and the absence of the term "S corporation" in that regulation, the only logical conclusion that can be drawn is that the Secretary did not intend to make an S corporations equivalent to a partnership for purposes of calculating "net earnings from self-employment."

Except for certain exceptions not relevant to the instant case, the IRS Code in its provisions governing S corporations states that "subchapter C shall apply to an S corporation and its shareholders." 26 U.S.C. § 1371(a)(1). Thus, hypothetically *if* there was an SSA regulation defining a C corporation for social security purposes as one that is recognized as a C corporation for federal income tax purposes, a full circle would be completed and S corporations would then be taken into account under current SSA regulations. *See e.g.* 20 C.F.R. § 404.1081(f) (Secretary defining partnership on basis of its use in IRS Code). The existence of such an SSA regulation would permit a partnership and C corporation to be defined in terms of usage in the IRS Code and the consequently the Code's regulations governing C corporations would in turn apply to S corporations.

While this result could be achieved through such a regulation, it can also be reached without such explicit statutory reference. Specifically, since Hamilton is an S corporation generally governed for tax purposes by IRS Code subchapter C, (*see* 26 U.S.C. § 1371(a)(1)), and because (a) a C corporation cannot be a partnership for federal income tax purposes, (*see Kleinsasser on behalf of Kleinsasser v. United States*, 707 F.2d 1024, 1027 [9th Cir.1983]); *(O'Neill v. United States*, 410 F.2d 888, 893 [6th Cir.1969]), and (b) the Secretary only recognizes partnerships which fall within the IRS Code's definition of partnership, (20 C.F.R. § 404.1081(f)),[26] it can be

---

**24.** This definition is also found in the subtitle of the IRS Code dealing with the taxation of partnerships. 26 U.S.C. § 761(a); *see* 42 U.S.C. § 411(d) (the social security statute states that "[t]he term 'partnership' and the term 'partner' shall have the same meaning as when used in subchapter K of chapter 1 of Title 26").

**25.** While a partnership and S corporation both permit cash income whether distributed or not to be taxed to the shareholder, and that similar treatment is accorded to trusts under the Code, (*see* Bittker and Eustice, *Federal Income Taxa-*

*tion of Corporations and Shareholders* ¶ 6.01(3) n. 5 [5d Ed.1987]), it is interesting that the Secretary specifically distinguishes between the mechanism used by the IRS for *trusts* from that of the SSA in connection with shareholder taxation. *See* 20 C.F.R. § 404.1081(f). Just as the SSA is trying to depart from the way the IRS treats S corporations, the SSA has departed from the IRS's mechanism for treating trusts.

**26.** "A partnership for social security purposes is one that is recognized as a partnership for income tax purposes." 20 C.F.R. § 404.1081(f).

concluded that under existing SSA regulations an S corporation *cannot* be deemed a partnership.

### B. Case law analysis

In *Blume v. Gardner*, 262 F.Supp. 405 (W.D.Mich.1966), *aff'd*, 397 F.2d 809 (6th Cir.1967), claimants, members of the Israelite House of David, brought an action to review the Secretary's decision denying them old-age insurance benefits. There, the claimants alleged that they were "self-employed" individuals as a result of their filing self-employment tax returns and paying self-employment taxes. Claimants' contended that the association, the Israelite House of David, was a partnership and (1) that each member was a partner with each other member in the production of the income of the association; (2) that such income was derived from "trades or businesses;" and (3) that their pro rata shares of such income constituted their "net earnings from self-employment."

The ALJ and Appeals Council held that the association was a corporation within the definition of the Code; that the income of the association was not derived from any trade or business engaged in *by the claimants;* and that no part of such income constituted earnings by claimants from self-employment. The Appeals Council stated that:

> [b]ased upon our analysis of the available information and evidence, it is held that the business enterprises of the Association are, for the purposes of the Self–Employment Contributions Act of 1954, the 'trades or businesses' of the *Association* and therefore, none of such business enterprises constitutes a 'trade or business' of the *individual members.* The facts that the members contribute their services to the enterprises conduct-

ed by the Association and that they receive certain benefits from the Association do not result in the members being considered as carrying on the trades or businesses *of the Association.* Moreover, the Israelite House of David is not a partnership within the meaning of that term as defined ... in [the] Code. Thus it follows that the pro rata shares of its net income (whether or not distributed to the members) ... must be treated as *dividends received* [emphasis in the original] or by the members should not be counted in computing their net earnings from self-employment.

*Blume,* 262 F.Supp. at 417 (*citing* Administrative Law Judge Decision, dated May 26, 1959) [emphasis added].

In *Blume,* the district court looked to certain factors set forth in *Morrissey v. Commissioner,* 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935), in deciding whether the Israelite House of David was a corporation. These *Morrissey* factors were used to determine whether an entity should be treated as a corporation under the IRS Code. The factors address whether: (1) the association of individuals was in the operation of a business for profit; (2) there was continuity of life of the organization; (3) there was centralization of management; and (4) there was limited liability of its members.

After thoroughly examining each of these factors, the district court in *Blume* concluded that the Israelite House of David due to the association's organization and manner of operation was more like a corporation than a partnership and that the "income here involved was that of the association for tax purposes and was not derived from any trade or business engaged by the plaintiffs." *Blume,* 262 F.Supp. at 417.

---

The court in *R.S. Smero, Inc. v. Levine,* 51 A.D.2d 273, 381 N.Y.S.2d 337, 339 (3d Dept. 1976) stated that

> [s]ubchapter S merely makes available to certain small corporations the same income tax treatment available to similarly structured proprietorships and partnerships, and it was not intended to eliminate all distinctions between sole proprietorships, partnerships and corporations—even small business corpora-

tions (*Neal v. United States,* 313 F.Supp. 393 [C.D.Cal.1970] ). It is purely a Federal income tax chapter providing income tax advantages which are accomplished in a manner which does not involve ignoring the corporate entity.

*See United States v. Richardson,* 469 F.2d 349 (10th Cir.1972); *Johnson v. United States,* 386 F.Supp. 374, 377 (E.D.Ky.1974).

The district court did not find claimants' statutory requirement of filling out of partnership form 1065 as imparting to them the status of a partnership. *Id.* at 413–14. Analogous to the ALJ's conclusion in *Blume,* the structure and operation of an S corporation, just like the structure and operation of the Israelite House of David, have many significant similar characteristics in common with a C corporation. *See Kleinsasser,* 707 F.2d at 1024 (reverend who wanted to utilize his religious communities investment tax credit, claimed he was a partner of the community so as to take advantage of the pass-through provisions accorded partnerships; the court, however, found that although the religious community filed a partnership return, the communities *incorporated* status along with the attributes of limited liability and receipt of dividends by the members resulted in the "association" being deemed a corporation, thus precluding the reverend from taking advantage of "partnership" tax credits); *cf. Rasmussen,* 374 F.2d at 590–94 (operation of "small scale family [hotel] enterprise" by *co-proprietors,* a husband and wife team, without a partnership agreement is sufficient to be a trade or business for social security purposes); *Raines v. Harris,* 508 F.Supp. 17 (W.D.Va.1980) (appellant found to be "self-employed" for social security purposes and thus covered by retirement insurance benefits where wife was neither a *partner* nor a *sole proprietor,* but did contribute substantial labor to family farming enterprise); *Frieburg v. Matthews,* 1A Unempl.Ins.Rep. (CCH) ¶ 15220 no. 76–0060 (S.D.Ill. January 31, 1977) (although there was no partnership or sole proprietorship, appellant found to be "self employed" for social security purposes in a family enterprise where there was no partnership agreement and the

business was "conducted in an informal manner").

Consequently, as was done by the courts in the above cases, this court will look to whether Hamilton was incorporated, formally organized and had an agreement governing its organization and operation. Hamilton as an electing "S corporation," (*see* 26 U.S.C. § 1361(b)), must satisfy local state statutes governing the creation and organization of a corporation. *See e.g.* N.Y.Bus.Corp. §§ 101 *et seq.* (McKinney 1990). Thus, Hamilton must comply with its certificate of incorporation and bylaws governing, *inter alia,* the election of officers and the issuance of stock. These requirements do not pertain to partnerships.

> More important than labels ... is the fact that an electing corporation remains a corporation—not only as a matter of state law, but also for many federal tax purposes. This point cannot be overemphasized, because it is often erroneously said that Subchapter S permits corporations to be treated as partnerships. In point of fact, there are many differences between a partnership and an 'electing small business corporation.' Even while the election is in effect, corporate redemptions, liquidations, reorganizations, and many other transactions are governed by the tax law applicable to corporations rather than by the law of partnerships.

*Johnson v. United States,* 386 F.Supp. 374, 377 (E.D.Ky.1974) (*quoting* Bittker and Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 6–4 [3d ed. 1971]). Thus, it becomes clear that an S corporation is unlike the informally run family businesses in *Rasmussen, Raines,* and *Frieburg.*

The ALJ, in the instant case, came to the same conclusion.[27] Specifically, the ALJ ruled that

---

27. Katz in *Exhibit 9* states that "it is simple arithmetic to realize that if you make 15 cents in one business and loss [sic] 5 cents in another business in the same year that all the money you have to spend is 10 cents, not 15 cents (15 − 5 = 10)." Katz' statement in the above example describing losses and gains coming from *different businesses* supports the Appeal Council's view that Katz and the S Corporation were not in the same business and thus the S corpora-

tion loss could not permissibly be used in calculating "net earnings from self-employment." *Appeals Council Order,* dated August 21, 1989.

Notwithstanding any inference which can be taken from claimant's mathematical example, Katz is confusing business profits with "earnings from self employment." "Earnings from self-employment" are similar to wages in that they both constitute remuneration to an individ-

[a]lthough the manner in which a shareholder of a subchapter S corporation reports gains and losses for federal income tax purposes is, as noted by counsel (exhibit 20), similar to that of partners, subchapter S corporations, such as Hamilton Agency, Inc., are—like any other corporations—entities entirely separate and distinct from their shareholders.... Contrary to the definition of self-employment contained in section 211(a) of the Act, which requires that, to generate net earnings (or loss) from self-employment, a trade or business must be carried on by an individual, the trade of business of subchapter S corporations in general, and Hamilton Agency, Inc. in particular, is carried on by the *corporation* and not individual shareholders. [emphasis in the original]

*ALJ Decision*, at p. 2. Thus, in so far as Ms. Katz is a shareholder of Hamilton, the ALJ's conclusion is correct in that the claimant is not engaged in the trade or business of the Hamilton "corporation" as opposed to the Hamilton "partnership."

The court is cognizant of the fact that claimant is not only contending to be a shareholder of the S corporation, but also is claiming to be a "self-employed" individual or "independent contractor" working for Hamilton. This contention is based on Hamilton's status as an insurance business and claimant's self-description as a "working partner" for an entity which has no "employees" other than claimant and her son who work as "partners." *See* (AC–1, p. 1). While the term "partner" as used by the claimant is a legal conclusion, the term "working" as descriptive of claimant's status at Hamilton is significant in that a working "independent contractor" is considered an employee of an S corporation for employment tax purposes.

Specifically, in Rev.Rul. 82–83, 1982–18 C.B. 151, the IRS was asked whether two

officers of a 2 person corporation who both "worked" for the corporation were "employees" or "independent contractors" hired by the S corporation. There, both officers received "draws" rather than "salaries" in consideration of their performing substantial services for the corporation.[28] Their duties included deciding on which performers to hire and controlling and directing all the operations of the theater. Both officers determined the amounts of their own compensation, the hours of their employment and the duties they would perform. The IRS in deciding their status noted that

[s]ections 3121(d) and 3401(c) of the Internal Revenue Code, applicable to the *Federal Insurance Contributions Act* and income tax withholding, respectively, provide that the term 'employee' includes any officer of a corporation. Section 3306(1), applicable to the Federal Unemployment Tax Act, includes within the meaning the term 'employee' the meaning assigned by Section 3121(d). Section 31.3121(d)–1(b) of the Employment Tax Regulations states that, generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any pay is considered not to be an employee of the corporation. For instance, directors of corporations in their capacity as such are not employees of the corporations.

*Id.* [emphasis added]. The IRS further noted while the question of whether an officer of a corporation is performing his duty as an officer or an independent contractor is a question of fact; in this case, the duties of the two officers fell within the scope of a corporate officer. Rev.Rel. 82–83, 1982–18 C.B. 151 (*citing Royal Theatre Corp. v.*

---

ual. Profits and losses, on the other hand, represent the bottom line *viz.* the corporation. Thus, under Katz' theory self-employed individuals could receive substantial remuneration through "net earnings from self-employment" and also benefit from the losses from that same firm.

**28.** Presumably, the remuneration received by Ms. Katz from Hamilton which she declared as business income and not wages on her federal income tax return was paid by Hamilton in a similar manner.

*United States,* 66 F.Supp. 301 [D.Kan. 1946]). The corporation by construing payments as "draws" and not "salary" did not remove the officers' status from that of an employee since the officers made fundamental decisions regarding the operation of the corporation—decisions not ordinarily made by an independent contractor.

Further, in Rev.Rul. 73–361, 1973–2 C.B. 331, the IRS stated that a majority stockholder/officer of an S corporation who performed "substantial services" for the corporation for which he received remuneration was an employee of the corporation and not a *partner.* The IRS noted that

> [n]either the election by the corporation as to the manner in which it will be taxed for Federal income tax purposes nor the consent thereto by the stockholder-officers has any effect in determining whether they are employees or whether payments made to them are 'wages' for Federal employment tax purposes. A corporation does not lose its identity by reason of such an election but remains a legal corporate entity.

*Id.*

In Rev.Rul. 71–86, 1971–1 C.B. 285, the IRS held that the president and sole shareholder, except for qualifying shares, of a closely held corporation who performed substantial services as an officer of the corporation was its employee. The president fixed his own salary and hours of employment and prescribed his own activities. The IRS noted that

> the fact that the N Corporation is a closely held corporation and that A is the sole shareholder and is in charge of its activities is immaterial since A's services are material to the operation of the corporation and he is entitled to and receives remuneration for the services from the corporation.

Rev.Rul. 71–86, 1971–1 C.B. 285.

In sum, the IRS's view of an individual who is both a stockholder and employee of an S corporation is evident in Rev.Rul. 59–221 1959–1 C.B. 225. In that ruling, advice was requested as to whether undistributed taxable income, required to be included in the gross income of shareholders of an S

corporation and not subject to federal income tax, constitutes "net earnings from self-employment" to *shareholders* in calculating self-employment taxes. The IRS found that such income should not be included and ruled that

> income *not* resulting from the conduct of a trade or business by an individual or by a partnership of which he is a member is *not* includible in computing the individual's net earnings from self-employment. Amounts which must be taken into account in computing a shareholder's income tax by reason of the provisions of section 1373 of the Code, are not derived from a trade or business carried on by such a [S corporation] shareholder. *Neither the election by a corporation as to the manner in which it will be taxed for Federal income tax purposes nor the consent thereto by the persons who are shareholders results in the consenting shareholder's being engaged in carrying on the corporation's trade or business.*

Rev.Rul. 59–221, 1959–1 C.B. 225 [emphasis added]. Based on the IRS's conclusion in the above revenue rulings, S corporation losses should not be used when calculating "net earnings from self-employment." *See* CCH S Corporations Guide ¶ 5820 (1990) ("[s]hareholders in S corporations are not liable for self-employment taxes on their shares of the corporation's ordinary income after 1982. Such amounts are *not derived from a trade or business* carried on by such a shareholder and are not 'net earnings from self-employment' ") [emphasis added].

This court holds the Secretary's decision correct in limiting an individual's ability to utilize losses in calculating "net earnings for self-employment" when that individual is both a shareholder and "working independent contractor" or employee of the S corporation. Absent a specific statutory reference, it cannot be concluded that the intent of the Act would allow a social security recipient who is a principal in a S corporation to deduct losses from such a business during the same year claimant

received remuneration from that corporation.

Based on (1) the amount of money earned by claimant at Hamilton, (2) claimant's own description of her status at Hamilton, and (3) the structure and organization of an S corporation, the court finds that claimant's employment status *viz.* Hamilton is not that of a member of a partnership and thereby cannot use S corporation losses in an attempt to decrease her "net earnings from self-employment" and therefore prevent a reduction in work benefits. Katz misunderstands the nature of the S corporation. "The congressional desire to provide an alternate form of doing business does not suggest an intention to treat electing corporations as partnerships or proprietorships for tax purposes." *Johnson,* 386 F.Supp. at 376.

Notwithstanding, claimant contends that the "apparent similarity" between a partnership and an S corporation requires the SSA to treat an S corporation as a partnership. Claimant has not provided the court with one case, statute, regulation, IRS revenue ruling or SSA ruling which supports her position.

As stated in the CCH S Corporations Guide

[i]t is common for tax practitioners to refer to an S corporation as a corporation which is taxed like a partnership. It is true in many instances that the provisions of Subchapter K that apply to partnerships are similar to the flow-through concept that applies to S corporations. However, significant differences exist between the taxation of an S corporation and a partnership. In many aspects, partnerships offer much more flexibility, tax-wise, than do S corporations. The attractiveness of an S corporation stems partially from the limited liability of the shareholders and the flow-through of income and losses to the shareholder.

CCH S Corporations Guide ¶ 6205 at 2793 (1989).

Importantly, an S corporation is a tax vehicle only, in all other respects the S corporation is a *regular corporation for state law purposes.* The key difference between a regular corporation and an S

corporation for *tax purposes* is that income, losses, deductions, and other tax attributes of an S corporation flow through to the shareholders rather than being taxed at the corporate level. From a nontax perspective, the shareholder of an S corporation, like a corporation, enjoy the aspect of limited liability.

*Id.* at 2791.

Just as it is well established that the corporate form is not to be disregarded for tax purposes unless the corporation is created for illegitimate purposes or conducts no business activities, the corporate form should not be disregarded when calculating "net earnings for self-employment." In the instant case, the claimant is asking the Secretary to disregard the corporate form and label Hamilton a partnership so as to fit within the Secretary's "net earnings for self-employment" framework. Ironically, it is the claimant, who wants to disregard the corporate form and not the Secretary, who did not find the corporation to be anything other than a valid and bona fide corporation.

## CONCLUSION

Based on the above discussion, I recommend that the defendant's motion for judgment on the pleadings be granted in part and denied in part. I recommend that the case be remanded to the Secretary for a recalculation of claimant's 1985 benefits taking into account the 1985 S corporation losses. I also recommend that the motion be granted with respect to claimant's 1986 S corporation losses.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Small v. Secretary of Health and Human Serv.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam).